PEOPLE v RIDLEY

Docket No. 56843. Argued March 4, 1976 (Calendar No. 12).—Decided June 3, 1976.

Raymond Ridley was convicted in Recorder's Court of Detroit, Susan D. Borman, J., of breaking and entering. The Court of Appeals, Allen, P. J., and T. M. Burns and R. M. Maher, JJ., reversed, holding that the defendant's response to questioning at the scene of a breaking and entering by a police officer before defendant was arrested and advised of his *Miranda* rights was not admissible in evidence (Docket No. 19317). The people appeal. *Held:*

The police investigation did not focus on the defendant until after he gave them an incriminating statement. Prior to the statement the officers were engaged in preliminary exploration of a crime in progress. The police had no actual knowledge of a crime, only a radio run referral to a street corner and a confusing description of the location where the breaking and entering was reported to be in progress. The defendant was advised that he was not under arrest, and was free to go. No *Miranda* warnings were required before the defendant was asked a question, and the response was properly admitted into evidence.

Reversed and conviction reinstated.

59 Mich App 631; 230 NW2d 9 (1975) reversed.

CRIMINAL LAW—STATEMENTS BY DEFENDANT—MIRANDA WARNING.

An incriminating statement made by a defendant to police concerning a breaking and entering before he was advised of his constitutional rights was properly admitted into evidence where the police investigation of the breaking and entering did not focus upon the defendant until after he made the statement, the police were engaged in attempting to locate the scene of a crime reported to be in progress and the defendant, at the

REFERENCE FOR POINTS IN HEADNOTES
[1] 29 Am Jur 2d, Evidence §§ 555–557.

time he was questioned, was not under arrest, in custody or significantly deprived of freedom of action.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Patricia J. Boyle,* Principal Attorney, Research Training & Appeals, and *Robert M. Morgan,* Assistant Prosecuting Attorney, for the people.

*Keller & Svenson* for defendant.

COLEMAN, J. The one issue considered on appeal is whether defendant's response to on-the-scene questioning by a police officer was admissible in evidence. Under the circumstances of this case, we find that the police were engaged in preliminary exploration regarding a crime in progress, so were not obliged to give *Miranda* warnings to defendant.

The case, therefore, is distinguishable from *People v Reed,* 393 Mich 342; 224 NW2d 867, *cert den* 422 US 1044, 1048; 95 S Ct 2660, 2665; 45 L Ed 2d 696, 701 (1975).

We reverse the Court of Appeals and reinstate defendant's conviction.

## I—FACTS

Police officers Filgo and Ekaut responded to a radio run of a "B&E" in progress at Lincoln and Selden in the City of Detroit in a big white house on the corner. Upon arrival, there was some confusion because there were four similar houses, one on each corner. Some citizens standing on Selden pointed toward an alley. The officers went to the alley and saw an automobile parked in the alley

with the motor running. Defendant was behind the wheel eating lunch.

Officer Filgo, in plain clothes, approached the car and identified himself as a police officer. The officer asked defendant to step from the car. Defendant complied with the request. The officer indicated that he was looking for the perpetrators of a B&E. He said that defendant was not under arrest and was free to go at any time. Filgo asked defendant, "Where are you from?" and "Where are the two guys that were with you?" At the time, Officer Filgo did not know who or how many people were involved; the question was asked because he was "[j]ust grabbing at straws". Defendant answered, "Do you mean Flint and Burks?" and "I think they went into that house right there", pointing to the house where the B&E was later established to have occurred. Officer Ekaut observed that the back door of the house had been forced open and informed Officer Filgo.

Defendant was then placed under arrest, handcuffed and advised of his rights. Two other men were found in the basement of the house.

Defendant and the two men found in the basement of the house, Flint and Burks, were convicted of breaking and entering an occupied dwelling. Defendant was sentenced to five years probation. The Court of Appeals reversed defendant's conviction ruling that his statement was inadmissible because he had not been given *Miranda* warnings. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). *People v Reed, supra.*

## II— *Reed*

However, Officer Filgo did not violate the holdings in *Miranda* and *Reed.*

In Reed[1] this Court held that a police investigation had focused on defendant before the police asked a question eliciting an incriminating statement from defendant. Therefore, *Miranda* warnings should have been given before asking the question.

The facts in *Reed* indicate that police had actual knowledge of a homicide upon discovering two bound and gagged dead bodies exhibiting signs of narcotics use in an alley. The officers followed blood stains and drag marks to a four-unit apartment building. They searched all but one apartment. The officers attempted to enter the last apartment, but the manager's key did not fit. Defendant then arrived and put his key in the door. He stated that he lived in the apartment. The officers requested to "come in and take a look around". Defendant allowed the police to enter. It was immediately apparent that the apartment was a narcotics pad. The bedroom floor had been recently cleaned. A wet mop with red-tinged water on it was in the bedroom. The officers also found red-stained trousers soaking in the sink in red-tinged water. There were at least three and perhaps nine to thirteen police officers in the apartment.

The Court noted:

"At this point Officer Clemons admitted the police 'had, perhaps, found the scene of the homicide' and that the defendant 'perhaps knew something about' the homicide and '[m]ore than that, perhaps'.

"In view of narrowing their investigation down to what they believe to be the place of the homicide and to the owner of that place, the defendant, whom they believed to be connected with that homicide, by knowl-

---

[1] The writer did not agree with the "focus only" test of *Reed,* but the decision is the law under the doctrine of stare decisis.

edge and '[m]ore than that, perhaps', the question arises whether the investigation had not 'focused'. This question is important because the police, without giving a *Miranda* warning, had the following colloquy with defendant as reported by Officer Hill:

" 'A. Yes, we questioned the defendant about the trousers and the suspected blood stains on them. He stated that they were his trousers and that he had injured himself while playing around with a lawn mower on Marlborough and at this time we told him that we had someone coming out from the scientific lab to check the water and the floor and the walls for blood and that if the blood on the trousers matched the blood of the deceased that we found in the alley, there might be a little trouble.

" 'Q. Did he make any response to this answer?

" 'A. Yes, he changed his statement.

\*   \*   \*

" 'A. He changed his statement with relationship to the trousers at first.

" 'Q. What did he tell you about the trousers the second time?

" 'A. He stated the second time the trousers were not his; he found them on the rear steps, so *[sic]* they probably would fit him and probably meant to soak them.

\*   \*   \*

" 'A. At this time we advised the defendant of his constitutional rights.' " *Reed, supra,* at 358–359.

With that fact situation, the Court held that the investigation had focused on defendant prior to the questions and answers concerning the trousers; therefore, *Miranda* warnings were required before the question, making the answers inadmissible.

The facts of the instant appeal reveal that the police investigation did not focus on defendant until after the incriminating statement. Prior to the statement, the officers were engaged in general

investigation or "preliminary exploration". *Reed.*
*Id.* 360.

## III— *Miranda*

Prior to the question and incriminating answer,
police officers were presented with the following
facts: (1) radio information of a possible B&E in
progress at Lincoln and Selden in a big white
house on the corner; (2) four similar houses, one
on each corner at Selden and Lincoln; (3) some
citizens pointing to an alley; (4) defendant eating
his lunch in a car in the alley; (5) defendant
stepping from the car at the identified officer's
request; and (6) the officer's assurance that defend-
ant was not under arrest and was free to go.

At that time, the officer had no actual knowl-
edge of a crime, only the radio run referral to a
corner where confusion resulted from the lack of a
specific address. The police were uncertain of the
location of the possible B&E. If they had not
arrived at the correct location, they would want to
move on quickly in order to reach the B&E, if any,
while still in progress. No probable cause for de-
fendant's arrest existed at that time. Defendant
was not in custody or "deprived of his freedom of
action". Therefore, no *Miranda* warnings were
required before defendant was asked a question.
Any other holding would unnecessarily restrict
efforts to apprehend those in the act of committing
a crime and require the police to accuse those
remotely connected by mere suspicion or circum-
stances—and the culprits might long be gone.

Upon receiving defendant's answer and observ-
ing that the back door of the house near the car
had been forced open, the officer focused his inves-
tigation on defendant. Thereupon, the officer
placed defendant under arrest and advised him of

the *Miranda* rights. This was correct under *Reed* and *Miranda.*

It is not disputed that *Miranda* prohibits prosecution use of certain statements:

"[T]he prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (p 444.)

The instant facts do not reveal a situation of custody or significant deprivation of freedom of action. Rather, the facts fit the following qualification found in *Miranda:*

"General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present." (pp 477–478.)

## IV— CONCLUSION

Neither the protections of *Miranda* nor *Reed* extend to these circumstances.

We do not find in *Reed* or any other opinion of the Court reason to believe that inquiries of on-the-scene observers must always be given *Miranda* warnings, just in case they may be accused later.

Under the circumstances of this case, the testi-

mony was properly admitted into evidence. The police were engaged in preliminary exploration regarding a crime in progress. There was no violation of defendant's constitutional rights.

Reverse and reinstate conviction.

KAVANAGH, C. J., and WILLIAMS, LEVIN, FITZGERALD, LINDEMER, and RYAN, JJ., concurred with COLEMAN, J.