PEOPLE v MARTIN

1. CRIMINAL LAW—CONSTITUTIONAL LAW—STATEMENTS BY DEFENDANT
   —CUSTODIAL INTERROGATION—SELF-INCRIMINATION.

   *Miranda* holds that the prosecution may not use statements,
   whether exculpatory or inculpatory, stemming from the custo-
   dial interrogation of a defendant unless it demonstrates the use
   of procedural safeguards effective to secure the privilege
   against self-incrimination; custodial interrogation means ques-
   tioning initiated by law enforcement officers after a person has
   been taken into custody or otherwise deprived of his freedom of
   action in any significant way.

2. CONSTITUTIONAL LAW—STATES—COURTS—POLICE ACTIVITY—FED-
   ERAL CONSTITUTIONAL STANDARDS.

   State courts may not impose as a matter of Federal constitutional
   law greater restrictions on police activity than those which the
   United States Supreme Court holds to be necessary under
   Federal constitutional standards.

3. CRIMINAL LAW—CONSTITUTIONAL LAW—MIRANDA WARNINGS—IN-
   CUSTODY—COERCIVE ENVIRONMENT.

   *Miranda* warnings are required only where there has been such a
   restriction on a person's freedom as to render him "in custody";
   it is this sort of coercive environment to which *Miranda* by its
   terms is made applicable, and to which it is limited.

4. CRIMINAL LAW—CONSTITUTIONAL LAW—MIRANDA WARNINGS—
   COERCIVE ENVIRONMENT—INCRIMINATING STATEMENTS.

   A coercive environment to which *Miranda* principles are applica-
   ble is developed only where the energies of law enforcement
   officers are diverted from the investigation process to the
   single-minded purpose of obtaining incriminating statements
   from a subject of their investigation; this alteration in purpose
   becomes evident when officers, from the surrounding circum-

REFERENCES FOR POINTS IN HEADNOTES
[1, 3–6] 21 Am Jur 2d, Criminal Law § 353.
[2] 16 Am Jur 2d, Constitutional Law § 554 *et seq.*

stances, exhibit an intent to restrain the freedom of the person interrogated and thereby coerce the utterance of incriminating statements.

5. CRIMINAL LAW—CONSTITUTIONAL LAW—MIRANDA WARNINGS—INVESTIGATIVE FOCUS—COERCIVE ENVIRONMENT.

Investigative focus is an inappropriate standard upon which to determine whether a coercive environment has developed for purposes of applying the *Miranda* principles.

6. CRIMINAL LAW—CONSTITUTIONAL LAW—MIRANDA WARNINGS—FREEDOM OF ACTION—QUESTIONING OF DEFENDANT—PROBABLE CAUSE—INVESTIGATIVE FOCUS—ARREST—PHYSICAL CUSTODY.

A defendant's freedom of action was not so restricted as to necessitate that *Miranda* warnings be given before a lone question was asked in an effort to ascertain the accuracy of an anonymous informant's tip regarding a stolen automobile where no probable cause existed to make an arrest at the time the question was asked, the investigation had focused on the defendant, and the defendant voluntarily accompanied the officers and had not been placed in physical custody or under arrest when the question was asked.

Appeal from Recorder's Court of Detroit, John Patrick O'Brien, J. Submitted June 21, 1977, at Detroit. (Docket No. 29424.) Decided September 21, 1977.

Gary S. Martin was charged with receiving stolen property in excess of $100. The trial judge's order dismissed the charge and quashed the warrant for defendant's arrest. The people appeal. Reversed and remanded.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward R. Wilson,* Principal Attorney, Appeals, and *Charles P. Kellett,* Assistant Prosecuting Attorney, for the people.

*Thomas H. O'Connor,* for defendant.

Before: D. C. RILEY, P. J., and BASHARA and P. R.
MAHINSKE,* JJ.

BASHARA, J. The plaintiff appeals from an order
quashing the warrant for defendant's arrest and
dismissing the charge of receiving stolen property
in excess of $100. MCLA 750.535; MSA 28.803. The
trial judge based his order on testimony taken at
the preliminary examination and a motion to
quash the warrant.

Sergeant Philip Schultz, of the Detroit Police
Department, testified that an anonymous infor-
mant advised him that defendant was driving a
stolen 1965 red Chevrolet Impala bearing Michi-
gan license number VMP 515. A check of the
Secretary of State's computer system showed the
license to be registered to another vehicle.

The informant further advised Sergeant Schultz
that defendant had driven the auto to a bar in
southwest Detroit. Officers Schultz and Richard
Clayton went to the bar and observed the auto in
the bar parking lot. They entered the bar and the
bartender directed them to the defendant. The
officers identified themselves to defendant and in-
dicated that they were interested in talking with
him. Defendant voluntarily accompanied them out-
side, while telling the officers "you have to advise
me of my rights".

Sergeant Schultz pointed to the red Chevrolet
and asked defendant if he owned that car. Defend-
ant responded that he did. Immediately thereafter
Sergeant Schultz advised defendant of his *Mi-
randa*[1] rights.

The trial judge ruled that the officer should have

---

* Circuit judge, sitting on the Court of Appeals by assignment.

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10
ALR3d 974 (1966).

advised defendant of his *Miranda* rights prior to asking any questions because the investigation had focused on him, and that the investigation was a custodial one as defined by the Supreme Court.

At first blush, it would seem that we are bound to follow the mandate of *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), amplified in *People v Ridley,* 396 Mich 603; 242 NW2d 402 (1976). In *Reed* the Michigan Supreme Court held that where the investigation has focused on a suspect prior to questioning, it is error to admit into evidence responses to questions asked prior to the issuance of a *Miranda* warning. *Ridley, supra,*[2] agreed that the so-called *"Reed* and *Miranda"* test applied, but found that the investigation had not yet "focused" to the point of requiring *Miranda* warnings.

At the outset we must review the tenets of the doctrine set forth in *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966). Law enforcement officials had taken the defendant into custody and interrogated him at a police station for the purpose of obtaining a confession. Justice Warren, speaking for the majority stated:

"Our holding will be spelled out with some specificity in the pages which follow but briefly stated it is this: the prosecution may not use statements, whether exculpatory or inculpatory, stemming from custodial interrogation of the defendant unless it demonstrates the use of procedural safeguards effective to secure the privilege against self-incrimination. By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or

---

[2] In *Ridley,* Justice Coleman, in a footnote at 606, indicated that she did not agree with the "focus only" test of the *Reed* doctrine but was bound to follow it because of stare decisis.

otherwise deprived of his freedom of action in any significant way.[4]

---

"[4] This is what we meant in *Escobedo [v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964)] when we spoke of an investigation which had focused on an accused."

---

*Id.* at 444; 86 S Ct at 1612; 16 L Ed 2d at 706.

Throughout *Miranda* the Court reiterated that its holding was limited to custodial interrogations only. When our Supreme Court adopted the "focus" test set forth in *Reed, supra,* it indicated that it was applying the *Miranda* doctrine, but it is difficult to reconcile that holding with the statements of the United States Supreme Court in *Miranda.* Further, the United States Supreme Court has clearly mandated that state courts may not impose greater restrictions on police activity, as a matter of Federal constitutional law, than those which the Court holds to be necessary under Federal constitutional standards. *Oregon v Hass,* 420 US 714; 95 S Ct 1215; 43 L Ed 2d 570 (1975). A review of Michigan decisions including *Reed, supra,* and *Ridley, supra,* reveals that Federal constitutional standards were the only ones relied upon to limit police activity. Consequently, we conclude that Michigan must be guided by the United States Supreme Court interpretation in delineating Federal constitutional law.

It is clear that in the case at bar, the defendant was not placed in physical custody or under arrest at the time the lone question was asked outside the bar. Was his freedom of action so restricted as to necessitate that *Miranda* warnings be given before any questions were asked, even though the investigation had focused on him?

Two recent, and perhaps landmark, United States Supreme Court decisions provide the an-

swer. In *Beckwith v United States,* 425 US 341; 96
S Ct 1612; 48 L Ed 2d 1 (1976), internal revenue
agents went to petitioner's home, explaining that
they were assigned to investigate the possibility of
tax fraud; a discussion ensued. The petitioner
contended that *Miranda* principles should be ex-
tended to cover interrogations in non-custodial
circumstances after a police investigation had fo-
cused on the subject. The Supreme Court rejected
the argument, stating:

"The narrow issue before the Court in *Miranda* was
presented very precisely in the opening paragraph of
that opinion—'the admissibility of statements obtained
from an individual who is subjected to *custodial* police
interrogation.' 384 US at 439 [86 S Ct at 1609; 16 L Ed
2d at 704].

\* \* \*

"Petitioner's argument that he was placed in the
functional, and, therefore, legal, equivalent of the *Mi-
randa* situation asks us now to ignore completely that
*Miranda* was grounded squarely in the Court's explicit
and detailed assessment of the peculiar 'nature and
setting of \* \* \* in-custody interrogation,' 384 US at 445
[86 S Ct at 1612; 16 L Ed 2d at 707]." Id, at 345–346; 96
S Ct at 1615–1616; 48 L Ed 2d at 7. (Emphasis supplied,
footnotes omitted.)

Bearing even more directly on the facts of the
instant case is *Oregon v Mathiason,* 429 US 492;
97 S Ct 711; 50 L Ed 2d 714 (1977). A home was
burglarized. The owner indicated to state police
that defendant was, in her opinion, the only possi-
ble suspect. Defendant was subsequently contacted
and agreed to meet an officer at the state patrol
office. The following facts are verbatim from the
Court's opinion:

"The officer met defendant in the hallway, shook

hands and took him into an office. The defendant was told he was not under arrest. The door was closed. The two sat across a desk. The police radio in another room could be heard. The officer told defendant he wanted to talk to him about a burglary and that his truthfulness would possibly be considered by the district attorney or judge. The officer further advised that the police believed defendant was involved in the burglary and [falsely stated that] defendant's fingerprints were found at the scene. The defendant sat for a few minutes and then said he had taken the property. This occurred within five minutes after defendant had come to the office. The officer then advised defendant of his *Miranda* rights and took a taped confession." *Id.* at 493–494; 97 S Ct at 713; 50 L Ed 2d at 718.

The Oregon Supreme Court reversed the conviction on the basis that the investigation had been held in a coercive environment.[3] The United States Supreme Court disagreed, holding that the investigation was neither coercive nor custodial. The landmark reasoning of the Court was as follows:

"Such a noncustodial situation is not converted to one in which *Miranda* applies simply because a reviewing court concludes that, even in the absence of any formal arrest or restraint on freedom of movement, the questioning took place in a 'coercive environment.' Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the question takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in

---

[3] *State v Mathiason,* 549 P2d 673 (Or, 1976).

custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." *Id.* at 495; 97 S Ct at 714; 50 L Ed 2d 719.

We do not gainsay that a rule similar to *Miranda* could be developed from our state constitution. However, the pertinent provision of our state constitution is identical to the Federal constitutional provision upon which *Miranda* and its succeeding interpretations are founded.[4] Thus, the question arises as to whether any significant purpose is to be achieved by adopting a policy that places greater constraints upon police investigative activity. If so, then a rule more stringent than the United States Supreme Court's "custody" standard is possible.

*Miranda,* its Federal constitutional basis, and the applicable provisions of our state constitution have but one objective—to prevent one who is a subject of a criminal investigation from being *compelled* by government agents to give self-incriminating statements.

Only where the energies of law enforcement officers are diverted from the investigation process

---

[4] US Const, Am V, reads as follows:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Const 1963, art 1, § 17 states:

"No person shall be compelled in any criminal case to be a witness against himself, nor be deprived of life, liberty or property, without due process of law. The right of all individuals, firms, corporations and voluntary associations to fair and just treatment in the course of legislative and executive investigations and hearings shall not be infringed."

to the single-minded purpose of obtaining incriminating statements from a subject of their "investigation", can we say that a coercive environment is developed. That alteration in purpose becomes evident when officers, from the surrounding circumstances, exhibit an intent to restrain the freedom of the person interrogated and thereby coerce the utterance of incriminating statements; *i.e.* the person is taken into custody or deprived of his freedom of movement in a substantial way, which amounts to custody. Investigative focus is an inappropriate standard.[5]

A more stringent focus standard would lead to the anomalous result that in garnering sufficient evidence through the investigative process to establish probable cause for an arrest, that evidence may be subsequently excluded merely because a person questioned was a suspect and, at that time, the primary subject of an investigation. Such a standard disregards the circumstances under

[5] Other jurisdictions have similarly concluded that custody, *not* investigative focus, marks the point at which *Miranda* warnings become mandatory. *See, e.g., State v Mumbaugh,* 107 Ariz 589; 491 P2d 443 (1971), *People v Dorado,* 62 Cal 2d 338; 42 Cal Rptr 169; 398 P2d 361 (1965) (applying the *Escobedo* "focus" test, but requiring custody), *People v Fioritto,* 68 Cal 2d 714; 68 Cal Rptr 817; 441 P2d 625 (1968), *People v Polite,* 236 Cal App 2d 85; 45 Cal Rptr 845 (1965) (applying the *Escobedo* "focus" test, but requiring custody), *People v Shipp,* 96 Ill App 2d 364; 239 NE2d 296 (1968), *State v Soverns,* 215 Kan 775; 529 P2d 181 (1974), *State v Gammons,* 76 NM 85; 412 P2d 256 (1966), *State v Travis,* 250 Or 213; 441 P2d 597 (1968) (holding that a "coercive environment" is absent without custody), *Commonwealth v Freeman,* 438 Pa 1; 263 A2d 403 (1970).

Our conclusion also accords with the perception of various commentators that the purpose and policy of *Miranda* is to provide safeguards against compelled self-incrimination resulting from custodial interrogation. *See, e.g., The Supreme Court, 1965 Term; Self-Incrimination,* 80 Harv L Rev 201 (1966), Medalie, Zeitz and Alexander, *Custodial Police Interrogation in Our Nation's Capital: The Attempt to Implement Miranda,* 66 Mich L Rev 1347 (1968), Ritchie, *Compulsion That Violates the Fifth Amendment: The Burger Court's Definition,* 61 Minn L Rev 383, 410–12 (1977).

Our research discloses no other state which has adopted the "Focus Standard".

which the evidence was obtained and constrains legitimate, good faith investigative efforts, as well as misconduct by law enforcement officers.

The case under review is illustrative. At the time the defendant was approached by the officers, only an anonymous informant's tip was being investigated. Although defendant was the sole suspect, no probable cause existed to make an arrest. See *People v Orozco,* 74 Mich App 428; 253 NW2d 786 (1977). When defendant voluntarily accompanied the officers outside the tavern, only one question was posed to him in an effort to ascertain the accuracy of the informant's information. Clearly, the investigative process was not thereby altered into an effort to compel incriminating statements from the suspect. No intent by the officers to restrain defendant's freedom in a substantial way for the purpose of compelling the utterance of incriminating statements was shown by the circumstances.

After determining from their investigation that defendant was in possession of an allegedly stolen automobile, the officers immediately advised him of his constitutional rights. It was still incumbent upon the prosecution to prove that the defendant received the automobile under circumstances showing that he knew that it was stolen property.

Without something to establish that defendant's freedom was substantially restrained in an effort to subject him to coercive interrogation, we cannot say that his answer to the officer's question was compelled, that his free will was overcome by the coercive energy of the government. Therefore, we must reverse and remand this case for trial. In so doing, we are confident that a review by our Supreme Court will lead to the same conclusion.

Reversed and remanded.