PEOPLE v SCHRAM

PEOPLE v ALEXANDER

Docket Nos. 45327, 45389. Submitted April 1, 1980, at Lansing.—
Decided June 17, 1980.

Michael Schram and Paul Alexander were each convicted of
attempted safe-breaking and of breaking and entering with
intent to commit larceny, and subsequently both were convicted
as habitual offenders, Ingham Circuit Court, James T. Kallman,
J. Both defendants appealed, raising a number of issues, and
the cases were consolidated for hearing and decision. *Held:*

1. A tape recording was made of the breaking and entering
by a surveillance alarm service, and at the trial a filtered copy
of the tape, which emphasized speaking voices and suppressed

REFERENCES FOR POINTS IN HEADNOTES

[1] 29 Am Jur 2d, Evidence § 436.

Admissibility of sound recordings in evidence. 58 ALR2d 1024.

Omission or inaudibility of portions of sound recording as affecting
its admissibility in evidence. 57 ALR3d 746.

[2] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 18.

47 Am Jur 2d, Jury §§ 272, 273, 308.

Juror's presence at or participation in trial of criminal case (or
related hearing) as ground of disqualification in subsequent crimi-
nal case involving same defendant. 6 ALR3d 519.

[3] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 6 *et
seq.*

What constitutes former "conviction" within statute enhancing
penalty for second or subsequent offense. 5 ALR2d 1080.

[4] 39 Am Jur 2d, Habitual Criminals and Subsequent Offenders § 9.

[5] 21 Am Jur 2d, Criminal Law § 189.

[6] 13 Am Jur 2d, Burglary §§ 24, 29.

[7] 21 Am Jur 2d, Criminal Law § 315.

[8] 29 Am Jur 2d, Evidence §§ 320, 321, 327.

[9] 29 Am Jur 2d, Evidence §§ 555-557.

Necessity of informing suspect of rights under privilege against self-
incrimination, prior to police interrogation. 10 ALR3d 1054.

What constitutes "custodial interrogation" within rule of Miranda v
Arizona requiring that suspect be informed of his federal consti-
tutional rights before custodial interrogation. 31 ALR3d 565.

background noises, was admitted and played for the jury. The defendants claim that the admission of the filtered tape was error because it was not an accurate reproduction of the original. There is no dispute as to the authenticity of the original. Admission of the copy was not error where there was testimony regarding its accuracy and the trial judge listened to both tapes before admitting the copy, and where there was sufficient evidence to establish the chain of custody of the tapes.

2. Defendants were sufficiently notified of the prosecutor's intention to file supplementary informations on the habitual offender charges even though they did not actually receive copies of those supplemental informations.

3. The trial court's decision to impanel the same jury which heard the principal case to hear the habitual offender charges was not an abuse of discretion. After that decision the defendants knowingly and voluntarily chose to have a bench trial on the habitual offender charges. No harm resulted to defendants from this procedure.

4. The defendants' assertions of a right to a hearing on the validity of their prior convictions has not been preserved for appellate review.

5. Arraignment on the habitual offender charges and the hearing on those charges were conducted properly.

6. The habitual offender statute is constitutional.

7. Breaking and entering with intent to commit larceny is not included within the offense of attempted safe-breaking. The conviction of both offenses arising out of the same criminal episode does not constitute double jeopardy.

8. Defendant Alexander was not denied the effective assistance of counsel.

9. Evidence of defendant Schram's prior conviction was properly admitted for purposes of impeachment.

10. Statements made by defendant Schram to a police officer at the scene of the crime were properly admitted into evidence even though the officer had not given the defendant *Miranda* warnings prior to asking certain questions of the defendant. The questions and answers were intended, as a matter of preliminary investigation, to gather sufficient facts to determine whether or not a crime had been committed. This was not custodial interrogation and *Miranda* warnings were not required.

11. Failure of defense counsel to produce a certain witness

was not error where the trial court found that the witness's testimony would have been detrimental to the defendants.

Affirmed.

1. CRIMINAL LAW — EVIDENCE — DUPLICATES — TAPE RECORDINGS.

A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original; therefore, a filtered tape recording of an incident involving a breaking and entering, on which the background noise present on the original recording had been electronically suppressed, was properly admitted into evidence where there was no dispute as to the original's authenticity and where there was testimony regarding the filtered copy's accuracy and genuineness as well as sufficient testimony to establish the chain of custody of the recordings (MRE 1003).

2. JURY — CRIMINAL LAW — HABITUAL OFFENDERS — JUDGE'S DISCRETION.

The same jury that convicts a defendant of a charge may subsequently sit at a trial on a habitual offender charge against the defendant; a defendant has no absolute right to a new jury when tried as a habitual offender, rather, it is within the sound discretion of the trial court to determine whether or not to impanel a new jury after a careful balancing of the costs and inconvenience against the possibility of prejudice to the defendant.

3. CRIMINAL LAW — HABITUAL OFFENDERS.

The single element to be determined at a habitual offender proceeding is the existence of any prior convictions.

4. CRIMINAL LAW — SENTENCING — PRIOR CONVICTIONS — INVALID CONVICTIONS.

A defendant who seeks to show that a prior conviction was constitutionally invalid and therefore an improper subject for consideration by a sentencing judge must present (1) prima facie proof that the previous conviction was constitutionally defective, such as a docket entry showing the absence of counsel or a transcript evidencing the same, or (2) evidence that he has requested such records and has not received them.

5. CRIMINAL LAW — SAME TRANSACTION — DOUBLE JEOPARDY.

The "same transaction" test requires that all criminal charges against a defendant arising out of the same transaction be joined at one trial; charging a defendant with separate and

distinct offenses growing out of the same criminal episode does not in and of itself constitute double jeopardy.

6. CRIMINAL LAW — BREAKING AND ENTERING — SAFE-BREAKING — INCLUDED OFFENSES.

The crime of breaking and entering with intent to commit larceny is not included within the crime of attempted safe-breaking; each offense requires proof of a fact which the other does not.

7. CRIMINAL LAW — ATTORNEY AND CLIENT — EFFECTIVE ASSISTANCE OF COUNSEL.

A defendant was not denied effective assistance of counsel where his attorney performed at least as well as an attorney with ordinary training and skill in the criminal law and did not commit an error of such serious proportion as to necessitate the granting of a new trial.

8. CRIMINAL LAW — EVIDENCE — IMPEACHMENT — PRIOR CONVICTIONS.

The criteria to be weighed in determining whether evidence of a defendant's prior conviction should be admitted for impeachment purposes are: (1) the nature of the prior offense; (2) whether the prior conviction is for substantially the same conduct for which the defendant is on trial; and (3) the effect on the decisional process if the defendant does not testify out of fear of impeachment by the evidence of a prior conviction.

9. CRIMINAL LAW — QUESTIONING DEFENDANTS — MIRANDA WARNINGS.

Police officers are not required to give *Miranda* warnings to everyone they question, but only where there has been such a restriction on a person's freedom as to render him "in custody"; inquiries made of a defendant as a matter of preliminary investigation to gather sufficient facts to determine whether or not a crime has been committed do not require the giving of warnings.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *Peter D. Houk,* Prosecuting Attorney, *Michael G. Woodworth,* Chief Appellate Attorney, and (in *Schram) Janis L. Blough,* Assistant Prosecuting Attorney, for the people.

*Paul E. Lincolnhol,* for defendant Schram on appeal.

*Kenneth G. DeBoer,* for defendant Alexander on appeal.

Before: BASHARA, P.J., and M. J. KELLY and D. R. FREEMAN,* JJ.

M. J. KELLY, J. On January 26, 1979, codefendants Michael Schram and Paul Alexander were convicted by a jury of attempted safe-breaking, contrary to MCL 750.351; MSA 28.799, and breaking and entering with intent to commit larceny, contrary to MCL 750.110; MSA 28.305. Following a bench trial on January 27, 1979, both defendants were convicted as habitual offenders, MCL 769.13; MSA 28.1085. Defendant Alexander received a sentence of 7-1/2 to 30 years imprisonment with a jail time credit of 138 days. Defendant Schram was sentenced to a term of 25 to 40 years imprisonment with jail time credit of 174 days. Defendants appeal as of right.

Defendants were arrested on October 26, 1978, at 608 North Larch Street, Lansing, Michigan, which is the location of Jack's Automotive Service, owned by Mr. Jack Woodward. Mr. Woodward testified that when he closed his garage on October 26, 1978, he telephoned the Sonitrol Alarm System Company and requested that his alarm system be activated. The system included two microphones which enabled Sonitrol to monitor noises throughout the garage and switches which set off an alarm in the Sonitrol office when a door or window was opened.

Ann Steffen, an employee of Sonitrol, testified

---

* Circuit judge, sitting on the Court of Appeals by assignment.

that she was on duty on the evening in question and that at 11:27 p.m. she monitored unusually loud noises at Jack's Automotive Service, after which a door opened. Ms. Steffen made a tape recording of the incident covering the period from 11:28 p.m. until she heard police arrive at the scene. Ms. Steffen identified the cassette recording at trial and there was additional testimony by the president and vice-president of Sonitrol concerning the chain of custody of the recording.

Officer Malcolm Hall testified that he made a filtered copy of the original recording. He stated that the filtering process does not alter the tape in any way other than emphasizing the speaking voices while reducing background noise interference. Police Detective Homer Phelps testified concerning the chain of custody of the cassette tape recording in the hands of the police department.

Dr. Oscar Tosi, a voice identification expert from Michigan State University, explained the procedure he followed in making the filtered copy of the original recording and the filtered tape was subsequently played for the jury over defense counsel's objection. Pursuant to a jury request, the filtered tape was played a second time during the deliberation stage of the proceedings.

On the day following return of the jury's guilty verdict, the trial court began the habitual offender proceeding. The trial court denied defense counsel's motion for adjournment, indicating that defendant could attack the validity of his prior convictions in a *Tucker*[1] hearing subsequent to the habitual offender proceeding and prior to sentenc-

[1] *United States v Tucker*, 404 US 443; 92 S Ct 589; 30 L Ed 2d 592 (1972), established a defendant's right to challenge the validity of prior convictions considered by the court in sentencing on the current charge when defendant was unrepresented by counsel on the earlier offenses.

ing. Following the court's further denial of a motion for a new jury, both defendants, contrary to advice of counsel, waived the right to a jury trial and were subsequently found guilty by the court of being habitual offenders.

*I. Issues Raised by both Defendant Schram and Defendant Alexander.*

Defendants claim that the trial court erred in admitting the filtered tape recording into evidence and in allowing that recording to be played for the jury at both the evidentiary and deliberation stages of the proceedings on the grounds that it was not an accurate reproduction of the original. MRE 1003 provides the following guidelines for the admission of duplicates:

"A duplicate is admissible to the same extent as an original unless (1) a genuine question is raised as to the authenticity of the original or (2) in the circumstances it would be unfair to admit the duplicate in lieu of the original."

Since the authenticity of the original tape is not disputed by defendants, we need only decide whether, under the circumstances, it was unfair to admit the duplicate in lieu of the original. The record reveals that before deciding to admit the filtered tape, the trial court heard testimony regarding its accuracy and genuineness and, out of the jury's presence, listened to both recordings and concluded that the only difference was the reduced amount of background noise on the duplicate. Our review of the record indicates that the people produced sufficient evidence on the question of chain of custody of the recordings to withstand defendants' challenge on that basis. See *People v Taylor,* 18 Mich App 381, 383-384; 171 NW2d 219 (1969), *aff'd* 386 Mich 204; 191 NW2d 310 (1971),

*People v Stevens,* 88 Mich App 421, 424; 276 NW2d 910 (1979).

In light of the proper foundation laid by the people in seeking admission of the challenged evidence, the trial court's care and diligence in dealing with this matter, and guided by the Fifth Circuit's decision in *Fountain v United States,* 384 F2d 624 (CA 5, 1967), *cert den sub nom Marshall v United States,* 390 US 1005; 88 S Ct 1246; 20 L Ed 2d 105 (1968)[2] we find no error in the admission of the filtered tape.

In *Fountain,* the defendants were convicted of the illegal sale or distribution of narcotic drugs, bribery of public officials, soliciting and accepting bribes, and aiding and abetting solicitation. At the defendants' trial, there was received into evidence and presented to the jury a tape-recorded telephone conversation involving the defendants. The defendants appealed the reception into evidence of copies of the original recording on the grounds that no justification was shown for not using the original tapes and that the noise suppression may have eliminated part of the conversation, thus making the copies unreliable. In *Fountain,* as in the present case, both the original and the copy of the original recording were admitted and in both cases the copy of the original recording was a filtered copy. In both cases there was testimony by experts indicating that the copy was an accurate reflection of the original. The *Fountain* Court held that:

"The existence of a significant degree of background noise which might well have interfered with the jury's ability to understand the substance of the conversations, plus the availability of a reliable method of removing the interference by making a copy and run-

---

[2] Federal Rule 1003 is identical with MRE 1003.

ning it through the noise suppression device sufficiently justify the admission and use of the copy. The District Court found, and it is not seriously disputed here, that the copy was an accurate reflection of the conversations transcribed on the original tape. Considering the strong showing here of the accuracy and reliability of the copy and its value in making the conversations more easily discernible, its admission was not error." *Fountain, supra,* 631.

The *Fountain* Court relied on *United States v Hall,* 342 F2d 849 (CA 4, 1965), in which the Fourth Circuit reached an identical conclusion under similar circumstances. Defendant in *Hall* challenged the admission of a tape copy of an original wire recording and the written transcript of the conversation on the grounds that the duplicate was untrustworthy and that allowing the jury to hear both the original recording and the copy placed unwarranted emphasis on this evidence. The Court in *Hall* held that it was within the discretion of the trial court to determine the necessity and effect of admitting the evidence and declined to disturb its ruling. Based upon the same reasoning, we approve of the court's decision in the case before us. Having concluded that the filtered tape was indeed admissible evidence, the decision to permit the second playing during the deliberation stage differs little from the typical compliance with a jury request for a reading back of certain portions of trial testimony. See *Moldovan v Allis Chalmers Mfg Co,* 83 Mich App 373, 384; 268 NW2d 656 (1978), *lv den* 406 Mich 916 (1979), and cases cited therein.

Defendants jointly and individually claim several errors with regard to the habitual offender trial: 1) that they were not arraigned on the habitual offender charges until after trial on the

principal offense, nor advised by their attorney of these charges; 2) that the trial court should have granted the motion for adjournment; 3) that the trial court abused its discretion in denying the motion for a new jury; 4) that defendants were not properly identified at the habitual offender trial; 5) that defendants were entitled to a *Tucker* hearing before or during the habitual offender proceeding; and 6) that conviction under the habitual offender statute, MCL 769.13; MSA 28.1085, constitutes a violation of the constitutional guarantee against double punishment.

Both defendants testified at trial on the principal charges and were impeached on cross-examination by evidence of prior convictions. Due to an admitted oversight on the part of defense counsel, defendants did not receive copies of the supplemental informations filed by the prosecutor charging them as habitual offenders. Defense counsel did, however, advise them of the likelihood of such charges and the prosecutor informed them of his intention to file the charges at the arraignment on the principal offenses.

In *People v Stratton,* 13 Mich App 350; 164 NW2d 555 (1968), this Court approved the procedure whereby the same jury that convicts a defendant of the current principal charge subsequently sits at the trial on the recidivist issue.[3] Subsequent decisions of this Court confirm the rule that a defendant has no absolute right to a new jury when tried as an habitual offender. *People v Eroh,*

[3] Some states *require* that the *same* jury sit again, after determining defendant's guilt on the current charge, and hear evidence of defendant's previous felony convictions. *E.g.,* Ark Stat Ann § 41-1005.

In California the jury hears evidence on the current and habitual offender charges at the principal trial. Cal Penal Code §§ 644, 666, 667.5, see *People v Womack,* 252 Cal App 2d 761; 60 Cal Rptr 870 (1967), *In re Yurko,* 10 Cal 3d 857; 112 Cal Rptr 513; 519 P2d 561 (1974).

47 Mich App 669, 676; 209 NW2d 832 (1973), *People v Elmore,* 92 Mich App 678, 684-685; 285 NW2d 417 (1979). It is within the sound discretion of the trial court to impanel a new jury after a careful balancing of the costs and inconvenience against the possibility of prejudice to the defendant. *Stratton, supra,* 360. When presented with the motion for a second jury, the trial court in the instant case articulated the following rationale for denying defendants' request:

"Regarding the separate Jury panel, this Jury has been instructed quite clearly that any admissions of any prior convictions cannot be used for the purpose of determining the guilt or innocence of the individuals in the prior trial. I said that several times to the Jury. And the Court, as I understand the law in this state, until it is changed—and I don't make the law; I follow the law to the best of my ability. They say that the same Jury can be used, that they are properly impaneled, and I will give them the instructions that they are to make their decision based upon—only on the evidence they hear in this Court as to whether or not— their habitual—and not what they heard in the prior trial. I will make that instruction before we start. Okay. Anything else? So, that motion is denied."

It is therefore clear on the record that the trial court made every effort to avoid prejudice to the defendants and felt that impaneling a new jury was not necessary to achieve that end.

Defendants, upon denial of the motion, waived the right to a jury trial and the habitual offender hearing was conducted with the court as trier of fact. Defendants made this choice knowingly and voluntarily and cannot now claim that this procedure resulted in harm.[4]

---

[4] In some other jurisdictions with similar recidivist statutes, a bench trial on the issue is statutorily mandated. *E.g.,* Fla Stat Ann § 775.084, NY Crim Pro Law § 400.21 (McKinney, 1979).

With regard to defendants' asserted right to a *Tucker* hearing we find that the issue has not been properly preserved for appellate review. The trial court indicated a willingness to conduct a hearing on the validity of defendants' prior convictions before sentencing; it was not obligated to consider the issue during the course of the habitual offender proceeding since the single element to be determined at such a hearing is the existence of any prior convictions. *People v Hastings*, 94 Mich App 488; 290 NW2d 41 (1979), *Stratton, supra.*

If, in fact, defendants' prior convictions were constitutionally invalid and therefore an improper subject for consideration by the sentencing judge, defendants were required to present "(1) prima facie proof that the previous conviction was constitutionally defective, such as a docket entry showing the absence of counsel or a transcript evidencing the same or (2) evidence that he has requested such records and has not received them". *People v Triplett*, 91 Mich App 82, 87; 283 NW2d 658 (1979), *rev'd on other grounds* 407 Mich 510; 287 NW2d 165 (1980), *People v Moore*, 391 Mich 426; 216 NW2d 770 (1974). Defendants herein failed to act on the trial court's suggestion to schedule such a hearing prior to sentencing and up to the time of this appeal have failed to invoke a *Tucker* hearing by offering the above required evidence.

We have examined those claims concerning arraignment on the habitual offender charges, identification evidence at the recidivist trial, and the constitutionality of the habitual offender statute and find them to be without merit. The filing of the supplemental information prior to the principal trial, arraignment just prior to the habitual offender hearing and the hearing itself were carried out in full compliance with the requirements

set forth in MCL 769.13; MSA 28.1085 and case law. Defendants' reliance on *People v Cairns,* 4 Mich App 633; 145 NW2d 345 (1966), is misplaced since the defendant in that case pled guilty to the habitual offender charges. Finally, the constitutional challenge raised here has previously proven unsuccessful. *People v Potts,* 55 Mich App 622; 223 NW2d 96 (1974), *lv den* 394 Mich 771 (1975).

*II. Issues Raised by Defendant Alexander.*

Defendant argues that he was improperly charged and convicted of two separate crimes based upon a single, continuous transaction. Defendant misstates and incorrectly applies the "same transaction" test adopted in *People v White,* 390 Mich 245; 212 NW2d 222 (1973), which requires that all criminal charges against a defendant arising out of the same transaction be joined at one trial. Charging defendant with separate and distinct offenses growing out of the same criminal episode does not in and of itself constitute a double jeopardy violation. The second prong of defendant's double jeopardy claim is based upon a lesser included offense analysis. The Supreme Court has recently framed the issue in terms of whether the second charged offense is by definition, or factually, necessarily included within the greater offense. *People v Jankowski,* 408 Mich 79; 289 NW2d 674 (1980). Defendant in *Jankowski* was convicted of armed robbery, larceny over $100 and larceny in a building as a result of one felonious taking. The Court vacated the larceny convictions based upon the following reasoning:

"To convict the defendant of the larceny charges, the jury was required to find him guilty of feloniously taking the cash register which contained $400 from within the gasoline station building. That was a necessary fact for conviction of both larceny in a building

and larceny over $100. In further concluding that the cash register was taken from the presence of the attendant after he was put in fear by the thief's use of a weapon, the jury found the offense was aggravated to one of armed robbery, but in doing so the jury was required to rely upon the same proof that was necessary to convict of the larceny charges." *Jankowski, supra,* 89.

In the instant case, the charge of breaking and entering with intent to commit larceny is not definitionally or factually included within the charge of attempted safe-breaking. Each offense requires proof of a fact which the other does not. Compare MCL 750.351; MSA 28.799 and MCL 750.110; MSA 28.305, *Blockburger v United States,* 284 US 299; 52 S Ct 180; 76 L Ed 306 (1932). As the prosecutor's brief correctly points out, "Not only was the cash register in the victimized building stripped of its change [defendant concedes the existence of evidence indicating that defendant Schram stole money from the cash register], but a radio in the premises was found wrapped in its own cord at a different location than where it had been when the business closed for the day." Thus, the jury was not required to rely on the same proof of movement of and damage to the safe as evidence of the larcenous intent accompanying the breaking and entering of the building.

Finally, we have examined defendant's ineffective assistance of counsel claim under the standards adopted in *People v Garcia,* 398 Mich 250; 247 NW2d 547 (1976), and find that defendant's attorney performed at least as well as a lawyer with ordinary training and skill in the criminal law and that he did not commit an error of such serious proportion as to necessitate the granting of a new trial. Counsel's admitted oversight in failing

to send a copy of the supplemental information to defendant did not affect the outcome of the case since he did advise him of the probability of such a charge and the prosecutor expressed his intention to file a supplemental information at the arraignment stage. Defendant testified at the principal trial and was impeached with evidence of prior convictions after being fully advised of his rights.

*III. Issues Raised by Defendant Schram.*

Evidence of defendant's 1968 conviction for armed robbery, for which he served a substantial prison sentence, was properly admissible under MRE 609. In the absence of affirmative misapplication of the admission criteria set forth in *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978), we find no error in the trial court's decision to admit evidence of defendant's prior conviction for impeachment purposes.

Likewise without substance is defendant's argument that statements made to the investigating officer at the scene of the crime should have been suppressed because defendant was not given *Miranda* warnings. *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694; 10 ALR3d 974 (1966). The questions and answers complained of concerned whether defendants were employees of Jack's Automotive Service, whether they had identification, and whether they had keys to the establishment. These inquiries were intended, as a matter of preliminary investigation, to gather sufficient facts to determine whether or not a crime had been committed. The prosecution is correct in its assertion that police questioning of defendant here did not require *Miranda* warnings since defendant was not subject to custodial interrogation, defined as "questioning initiated by law enforcement officers after a person has been taken into

custody or otherwise deprived of his freedom of action in any significant way". *Miranda, supra,* 444.

This Court, in *People v Martin,* 78 Mich App 518; 260 NW2d 869 (1977), quoted the following language from *Oregon v Mathiason,* 429 US 492; 97 S Ct 711; 50 L Ed 2d 714 (1977), which is equally applicable here:

"Any interview of one suspected of a crime by a police officer will have coercive aspects to it, simply by virtue of the fact that the police officer is part of a law enforcement system which may ultimately cause the suspect to be charged with a crime. But police officers are not required to administer *Miranda* warnings to everyone whom they question. Nor is the requirement of warnings to be imposed simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect. *Miranda* warnings are required only where there has been such a restriction on a person's freedom as to render him 'in custody.' It was *that* sort of coercive environment to which *Miranda* by its terms was made applicable, and to which it is limited." *Id.* at 495; 97 S Ct at 714; 50 L Ed 2d at 719.

See *People v Ridley,* 396 Mich 603; 242 NW2d 402 (1976), *People v Dunlap,* 82 Mich App 171; 266 NW2d 637 (1978).

The remaining two issues raised by defendant concern defense counsel's failure to produce witness Julian Maldonado and alleged prosecutorial suppression of the potentially favorable evidence. Defendant's arguments do not merit extensive treatment. We quote with approval the trial court's assessment of the situation in denying defendant's motion for new trial:

"*The Court:* All right, gentlemen. I have heard the

arguments of counsel. Frankly, I'm satisfied with the way defense counsel handled this case. I think he had a case that was extremely difficult to defend. If he had called Mr. Maldonado as a witness, he would have certainly been charged with ineffectiveness of being an attorney, because Mr. Maldonado's testimony, as per his sworn affidavit, totally destroys and disagrees with Scram's [sic] and Alexander's testimony. If he had given the name sufficiently in advance and had Detective Phelps checked this out, I'm sure they would have been happy to call Mr. Maldonado as a rebuttal witness to challenge the testimony of Mr. Scram [sic] and Mr. Alexander.

"I don't see where the failure to call or produce has in any way harmed or injured this particular Defendant. I think if anything, the failure to find him in time for the trial was definitely to the Defendant's advantage. I see nothing here from this record that requires a granting of a Motion for New Trial. Your Motion is denied."

Defense counsel performed competently. He did not commit an error so serious that in its absence defendant would have had a reasonably likely chance of acquittal. See *Garcia, supra.*

Affirmed.