PEOPLE v INGRAM

Docket No. 66159. Decided November 23, 1981. On application by the people for delayed leave to appeal the Supreme Court, in lieu of granting leave to appeal, reversed the judgment of the Court of Appeals and remanded the case to the Recorder's Court of Detroit for further proceedings.

Roscoe Ingram was arrested for carrying a concealed weapon by Detroit police officers who had been writing a parking citation for his automobile. The defendant came up to the vehicle, which was double-parked in front of his house, unlocked it and started to get inside. One of the officers approached the defendant and asked if it was his car, and when the defendant replied that it was, the officer asked to see his driver's license. As the defendant was reaching for his driver's license, the officer saw a large bulge in his clothing, and asked the defendant if he had a gun. The defendant admitted that he did and that he did not have a permit to carry it. The officer then seized the pistol and arrested him. The Recorder's Court of Detroit, George W. Crockett, III, J., granted the defendant's pretrial motion to suppress the evidence of the pistol on several alternate grounds, and dismissed the charges. The Court of Appeals, T. M. Burns, P.J., and R. M. Maher and Clements, JJ., affirmed on the ground that there was no justification for the request to see the defendant's driver's license and that he was, therefore, illegally stopped and questioned by the police (Docket No. 78-1920). The people apply for delayed leave to appeal. *Held:*

There was nothing improper about the police conduct that led to discovery of the weapon.

1. After the police officer had ascertained that the defendant was the owner of the car, the officer requested his driver's license so that the parking citation could be issued to him. Given the compliance with the request, and the responses to the officer's questions, the seizure of the weapon and the arrest of the defendant were not constitutionally impermissible. It is neither appropriate nor necessary to enter into a detailed analysis of the balancing of the intrusiveness of investigatory

searches and seizures against the law enforcement interests to be served in this case.

2. The Court of Appeals did not reach the issue of the failure to warn the defendant of his constitutional rights, but it is unnecessary to return the case to the Court of Appeals for consideration of the issue. While the observation of the bulge under the defendant's clothing certainly justified further inquiry by the officer, it was not until after the further investigation revealed that the defendant had a gun that the officer had sufficient reason to believe that a crime had been committed to necessitate warning the defendant of his constitutional rights.

The judgment of the Court of Appeals is reversed and the case is remanded to the Recorder's Court of Detroit for further proceedings.

99 Mich App 410; 297 NW2d 684 (1980) reversed.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Principal Attorney, Appeals, and *Timothy A. Baughman* and *Janice M. Joyce,* Assistants Prosecuting Attorney, for the people.

*Angela R. Sims* for defendant.

PER CURIAM. The defendant was arrested with a pistol in his possession and' was charged with carrying a concealed weapon. However, on his motion the trial judge suppressed the evidence of the pistol, and the case was dismissed. The Court of Appeals affirmed. The prosecutor has filed a delayed application for leave to appeal, claiming that there was nothing improper about the police conduct that led to the discovery of the weapon. We agree and reverse.

I

Detroit police officers came upon an unoccupied automobile illegally double-parked. While a park-

ing citation was being prepared, the defendant appeared, unlocked the car, and started to get in. One of the officers approached him and asked if it was his car. The defendant replied that it was. The officer then asked to see the defendant's driver's license. He testified as follows:

"*A.* As he was reaching for his driver's license I saw a large bulge underneath the front of his waist area. I asked him if he had a gun and he said, 'Yes'. I asked him if he had a permit to carry it; he said, 'No'. I then seized the gun and arrested him."

The defendant was bound over for trial following a preliminary examination. He filed a motion to dismiss, which the Recorder's Court judge treated as a motion to suppress the gun. After an evidentiary hearing, the judge ruled that the evidence of the gun should be suppressed for several reasons. First, the defendant was on his own property.[1] Second, the defendant's reaching for his driver's license was the result of the police request, which was improper either because it was made in reliance on a City of Detroit ordinance that had been ruled unconstitutional,[2] or because there was no

[1] MCL 750.227; MSA 28.424 excepts from its prohibition against carrying a concealed weapon a person who does so, "in his dwelling house or place of business or on other land possessed by him". At the hearing on the defendant's motion, the prosecutor stipulated that Mr. Ingram was the owner of the house in front of which he was arrested.

[2] The ordinance provided:

"When a police officer has reasonable cause to believe that the behavior of an individual warrants further investigation for criminal activity, the officer may stop and question such person." Detroit City Code, § 39-1-52.3.

It was held unconstitutional in *People v DeFillippo,* 80 Mich App 197; 262 NW2d 921 (1977). However, as the Court of Appeals noted in the present case, the United States Supreme Court held that before the ordinance was declared unconstitutional an arrest based on it could be valid. *Michigan v DeFillippo,* 443 US 31; 99 S Ct 2627; 61 L Ed 2d 343 (1979). The Court of Appeals decision in *DeFillippo* was issued a few days before the trial court's ruling in this case, but after the defendant's arrest.

"rational basis for inquiry" under the circumstances. Third, the judge said that at the point when the officer formed a definite and specific suspicion that the defendant had a weapon, it was necessary to advise the defendant of his constitutional rights before asking him whether he had a weapon.

## II

The Court of Appeals affirmed. 99 Mich App 410; 297 NW2d 684 (1980). The Court rejected the argument based on the defendant's interest in the property adjacent to the scene of his arrest, and concluded that the subsequent declaration that the city ordinance was unconstitutional would not deprive an officer of probable cause while acting under it if the statute was applicable.[3] However, the Court sustained the suppression of the weapon based on the trial judge's conclusion that there was no justification for the request to see his driver's license:

"[T]here was no 'reasonable cause' nor even a 'mere inkling' to believe that a criminal activity had been, or was about to be, committed by the defendant. At the time of his arrest, defendant had merely walked up to, and had unlocked, an illegally parked vehicle. These facts do not justify an investigative stop. See, *Terry v Ohio,* 392 US 1; 88 S Ct 1868; 20 L Ed 2d 889 (1968), *People v Tebedo,* 81 Mich App 535; 265 NW2d 406 (1978). A parking citation is issued to the owner of a vehicle, not to the driver. Defendant was not driving the car and had merely attempted to enter it when stopped by the officer. Thus, there was no reason to require him to show his driver's license.

"We find, therefore, that the illegal stop by Officer

[3] Neither of these conclusions is challenged by the defendant on this appeal.

Wood tainted his subsequent search and arrest, since the officer would not have been in a position to observe the suspicious bulge if defendant had not been reaching for his wallet." 99 Mich App 418-419.

In view of this result, the Court did not reach the necessity for warning the defendant of his constitutional rights before questioning him.

### III

It is neither appropriate nor necessary for us to enter into a detailed analysis of the balancing of the intrusiveness of investigatory searches and seizures against the law enforcement interests to be served.[4] It is sufficient to note that this simply is not a close case. Having ascertained that the defendant was the owner of the car, the officer requested his driver's license so that the parking citation could be issued to him.[5] Given the compliance with this request, and the response to the officer's questions, the seizure of the weapon and the arrest of the defendant were not constitutionally impermissible.

### IV

Although the Court of Appeals did not reach the final alternate basis for the trial judge's decision— the failure to warn the defendant of his constitu-

---

[4] See, *e.g., Michigan v Summers,* 452 US 692; 101 S Ct 2587; 69 L Ed 2d 340 (1981); *Pennsylvania v Mimms,* 434 US 106; 98 S Ct 330; 54 L Ed 2d 331 (1977).

[5] The Court of Appeals opinion asserts that a parking citation is issued to the owner of a vehicle, rather than its driver. We note that the state parking statute in effect at the time is directed at the person who parks the vehicle. MCL 257.674; MSA 9.2374. It is true that if the police do not know who parked the car illegally, the owner is presumed to have done so. MCL 257.675a; MSA 9.2375(1). However, the Court of Appeals analysis ignores the fact that the defendant had told the officer that the car was his.

tional rights—it is unnecessary to return the case to the Court of Appeals for treatment of that issue. While the observation of the bulge under the defendant's clothing certainly justified further inquiry by the officer, it was not until after the further investigation revealed that the defendant had a gun that the officer had sufficient reason to believe that a crime had been committed to necessitate warning the defendant of his constitutional rights. *Cf. People v Ridley,* 396 Mich 603; 242 NW2d 402 (1976).

Accordingly, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and remand the case to the Recorder's Court for the City of Detroit for further proceedings.

COLEMAN, C.J., and KAVANAGH, WILLIAMS, LEVIN, FITZGERALD, RYAN, and BLAIR MOODY, JR., JJ., concurred.