PEOPLE v HILL

Docket No. 78796. Argued May 5, 1987 (Calendar No. 9). Decided
    November 13, 1987.

    M. L. Hill was charged in the Recorder's Court of Detroit with
    defrauding Michigan Consolidated Gas Company in the use of
    heat supplied to his church. The court, Clarice Jobes, J.,
    granted the defendant's motion to suppress all inculpatory
    statements made to investigators who questioned him at his
    church, on the ground that at the time of questioning the
    defendant was the focus of an investigation and thus entitled to
    warnings required under *Miranda v Arizona,* 384 US 436
    (1966). The Court of Appeals, CYNAR, P.J., and WAHLS and
    BORRADAILE, JJ., reversed in an opinion per curiam, holding
    that the proper test for determining whether *Miranda* rights
    must be provided is whether the defendant was in custody at
    the time of questioning (Docket No. 87540). The defendant
    appeals.

    In a unanimous opinion by Justice BRICKLEY, the Supreme
    Court *held:*

    Warnings required under *Miranda v Arizona,* 384 US 436
    (1966), must be given prior to questioning when a person is in
    custody or otherwise deprived of freedom of action in any
    significant way, not at the time a person becomes the focus of
    an investigation.

    1. Under federal case law, *Miranda* warnings need only be
    given when a person is in custody. In Michigan, interpretations
    of the *Miranda* rule have never been grounded on the self-
    incrimination provisions of the Michigan Constitution. Nor does
    Michigan case law provide a basis for requiring *Miranda*-type
    warnings when a person becomes the focus of an investigation.

    2. The requirement that *Miranda* warnings be given guards

REFERENCES

Am Jur 2d, Criminal Law §§ 791 *et seq.*

The progeny of Miranda v Arizona in the Supreme Court. 46 L Ed
    2d 903.

What constitutes "custodial interrogation" within rule of Miranda v
    Arizona requiring that suspect be informed of his federal consti-
    tutional rights before custodial interrogation. 31 ALR3d 565.

against the possibility that government agents may compel a person to make self-incriminating statements in violation of constitutional rights. Its purposes are better served by a test which looks to whether a person was in custody rather than whether the person was the focus of an investigation. The mere fact that a person has become the focus of an investigation does not involve subjection to any avoidable offense against liberty or dignity. It does not, in and of itself, present a danger that involuntary statements will be made. It is only in the coercive atmosphere of custodial interrogation that a person must be protected from improper police tactics. The specter of involuntariness is not raised simply because the person being questioned is the prime suspect if the environment in which the questioning occurs is not coercive, i.e., if the suspect's freedom has not been significantly limited.

3. In this case, the questioning of the defendant was brief and took place in his own office, in a building he owned, in the presence of other persons known to him. There was no basis for the defendant to reasonably believe that he was in custody or that his freedom of action was significantly limited. Thus, at the time of the questioning, it was not necessary that the defendant be informed of his *Miranda* rights.

Justice ARCHER, joined by Justice CAVANAGH, concurring, stated that, looking at all the relevant circumstances, an inquiry should be made as to whether, at the time of the interrogation, a reasonable person would have believed to have been taken into custody or otherwise deprived of freedom of action in any significant way.

Affirmed.

152 Mich App 374; 393 NW2d 642 (1986) affirmed.

CRIMINAL LAW — CONSTITUTIONAL LAW — *MIRANDA* WARNINGS.
   Warnings required under *Miranda v Arizona,* 384 US 436 (1966), must be given prior to questioning when a person is in custody or otherwise deprived of freedom of action in any significant way, not at the time a person becomes the focus of an investigation.

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *John D. O'Hair,* Prosecuting Attorney, and *Timothy A. Baughman,* Chief, Criminal Division, Research, Training and Appeals, for the people.

State Appellate Defender (by *James Krogsrud*) for the defendant.

Brickley, J. This case requires that we determine, whether *Miranda*[1] warnings must, prior to questioning, be given to an individual at the time he becomes the focus of the investigation or, instead, at the time he is in custody or otherwise deprived of his freedom of action in any significant way. We hold that the latter consideration controls.

I

The appellant in this case, the Rev. M. L. Hill, was charged with defrauding Michigan Consolidated Gas Company in the use of heat supplied to his church. On February 10, 1985, three investigators, two from Michigan Consolidated Gas Company and one from the Wayne County Prosecutor's Office, went to the church to question Rev. Hill and conduct a search pursuant to a valid search warrant. During the brief questioning, Rev. Hill made a number of inculpatory statements.

The questioning took place in Rev. Hill's office. In addition to the defendant and the investigators, two or three other persons, not known to the investigators, but presumably known to Rev. Hill, were also in the office.

The prosecution's investigator testified that by the time he and the other investigators questioned Rev. Hill, he was the focus of the investigation. However, at no time prior to or during the questioning was Rev. Hill informed of his *Miranda* rights.

On this basis, defendant moved for the suppres-

---

[1] *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

sion of all the statements he made to the investigators. The trial judge granted the motion on the basis of his finding "that the triggering mechanism of the requirement of *Miranda* warnings is 'focus' and not 'custody' . . . ."[2] The Court of Appeals reversed the trial court's decision on the ground that, in light of the United States Supreme Court's rejection of the "focus" test in *Beckwith v United States,* 425 US 341; 96 S Ct 1612; 48 L Ed 2d 1 (1976), the proper test for determining whether *Miranda* rights must be provided is whether or not the defendant was in custody at the time of the questioning. We granted leave to resolve this question.[3]

II

Much of the confusion surrounding this area of the law stems from this Court's failure to clearly define the interplay between the United States Supreme Court in *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), and its earlier decision in *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964).

*Escobedo* was primarily an extension of *Massiah v United States,* 377 US 201; 84 S Ct 1199; 12 L Ed 2d 246 (1964). In *Massiah,* the Supreme Court had held that once an individual is formally charged with a crime, any statements deliberately elicited from him without permitting him the assistance of counsel must be excluded as violative of the Sixth Amendment. The Supreme Court stated that any time the police try to so elicit a statement from a defendant his Sixth Amendment rights are brought into play since the time between arraignment and beginning of trial is " 'the most critical

---

[2] Order of September 4, 1985. Recorder's Court No. 85-04047.

[3] 426 Mich 866 (1986).

period of the proceedings . . . [and] defendants . . . [are] as much entitled to such aid [of counsel] during that period as at the trial itself.' " *Id.* at 205, quoting *Powell v Alabama,* 287 US 45, 57; 53 S Ct 55; 77 L Ed 158 (1932). The majority in *Escobedo* viewed the case as extremely similar to *Massiah.* The fundamental difference, of course, was that Escobedo, unlike Massiah, had not been charged with a crime at the time of questioning However, the majority determined that once the investigation had focused on the defendant legal aid and advice were as important as if he had been indicted:

> It would exalt form over substance to make the right to counsel, under these circumstances, depend on whether at the time of the interrogation, the authorities had secured a formal indictment. Petitioner had, for all practical purposes, already been charged with murder. [378 US 486.]

While the *Escobedo* Court focused in particular on the degree to which the defendant had become the prime suspect, there is other language in the opinion which indicates that the Court was also concerned with the fact that at the time of questioning the defendant was in police custody:

> We hold, therefore, that where, as here, the investigation is no longer a general inquiry into an unsolved crime but has begun to focus on a particular suspect, *the suspect has been taken into police custody,* the police carry out a process of interrogations that lends itself to eliciting incriminating statements, the suspect has requested and been denied an opportunity to consult with his lawyer, and the police have not effectively warned him of his absolute constitutional right to remain silent, the accused has been denied "the Assistance of Counsel" . . . . [378 US 490-491. Emphasis supplied.]

In *Miranda,* the analysis clearly shifted from whether the suspect was the focus of the investigation to whether he was in custody. In an oft-cited footnote and its accompanying text, the *Miranda* Court stated at 444:

> By custodial interrogation, we mean questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way.[4]

---

[4] This is what we meant in *Escobedo* when we spoke of an investigation which had focused on an accused.

---

Rather than clearing up the relation between focus and custody, this excerpt resulted in some courts holding that the triggering element of the *Miranda* requirement was to be understood within the focus paradigm of *Escobedo* rather than the converse.[4] However, subsequent United States Supreme Court cases have made clear that *Miranda*'s custody concept has displaced *Escobedo*'s focus concept.[5] In *Hoffa v United States,* 385 US 293; 87 S Ct 408; 17 L Ed 2d 374 (1966), the defendant was the focus of a federal investigation for jury tampering. Federal agents paid an informer to report to them concerning a conversation the defendant

[4] For example, in *People v Wasson,* 31 Mich App 638; 188 NW2d 55 (1971), a case which was to have significant effect on our jurisprudence, the Court of Appeals cited *Miranda* for the proposition that the warnings must be given where the investigation becomes accusatory.

[5] While the approach followed in *Escobedo,* i.e., extending Sixth Amendment protections to suspects prior to the bringing of charges against them, has not again been employed by the United States Supreme Court, *Massiah,* which affords such protections once charges have in fact been brought, remains viable and indeed has been employed in a setting where a Fifth Amendment analysis might have seemed equally appropriate. *Brewer v Williams,* 430 US 387; 97 S Ct 1232; 51 L Ed 2d 424 (1977).

Since no charges had been brought against Rev. Hill prior to his interrogation, the question of Sixth Amendment protections does not arise in this case.

had had with him and others. The defendant argued, inter alia, that his Sixth Amendment rights had been violated, since the government had grounds to take him into custody on the jury tampering charge prior to the conversations in question, and had he been placed in custody at that time the government "could not have continued to question [him] without observance of his Sixth Amendment right to counsel [citations to *Massiah* and *Escobedo*]." 385 US 309.

The United States Supreme Court strongly rejected this claim, stating:

> Nothing in *Massiah,* in *Escobedo,* or in any other case that has come to our attention, even remotely suggests this novel and paradoxical constitutional doctrine, and we decline to adopt it now. There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction. [*Id.* at 310.]

While not yet explicitly rejecting the focus test, this analysis left little if any room for its use. As one commentator described it:

> [C]onsiderations drawn from *Escobedo's* emphasis on "focus" underlay Jimmy Hoffa's claim that the Constitution confers a right to arrest. At an early stage in [the] "investigation," he argued, the Government could present probable cause for his arrest, and therefore he had a constitutional right

to be arrested and allowed the protection of coun-
sel. The Court boggled at the novelty of this claim.
But its surprise was unwarranted. Hoffa's lawyers
had simply chosen inartistic phrasing for an argu-
ment substantially drawn from the Court's own
opinions: when suspicion had focused on Hoffa the
general investigation was functionally complete; at
that point, he was the accused and thereby enti-
tled to the absolute protection of the privilege
against self-incrimination.

Even if Hoffa had made his point in a less
startling fashion, however, his chance for success
would have been slight. In *Miranda* the Court had
already . . . emphasized that the line was to be
drawn mechanically at the point when the suspect
was taken into custody. It would be all but impos-
sible to determine the point outside the police
station at which suspicion has been focused on a
single individual. The point at which an accused is
taken into custody, however, can be judicially
determined with reasonable certainty. [Note, *Judi-
cial control of secret agents,* 76 Yale L J 994, 1008
(1967).]

Any doubts that *Hoffa* may have left as to the
status of the focus test were removed in *Beckwith
v United States, supra.* The defendant was under
investigation by the IRS for criminal tax fraud.
Two IRS special agents came to the defendant's
home and questioned him there after giving him
incomplete *Miranda* warnings. The defendant ar-
gued that since he was the focus of the investiga-
tion, he should have been given full *Miranda*
warnings, even though he was not yet in custody.
The United States Supreme Court, while never
citing *Escobedo,* made absolutely clear that the
warnings need not be given simply because the
defendant has become the focus of the investiga-
tion:

[W]e "are not impressed with this argument in
the abstract nor as applied to the particular facts

of Beckwith's interrogation." It goes far beyond
the reasons for that holding and such an extension
of the *Miranda* requirements would cut this
Court's holding in that case completely loose from
its own explicitly stated rationale. The narrow
issue before the Court in *Miranda* was presented
very precisely in the opening paragraph of that
opinion—"the admissibility of statements obtained
from an individual who is subjected to custodial
police interrogation." 384 US, at 439. The Court
concluded that compulsion is "inherent in custo-
dial surroundings," *id.,* at 458, and, consequently,
that special safeguards were required in the case
of "incommunicado interrogation of individuals in
a police-dominated atmosphere, resulting in self-
incriminating statements without full warnings of
constitutional rights." *Id.,* at 445. In subsequent
decisions, the Court specifically stressed that it
was the custodial nature of the interrogation
which triggered the necessity for adherence to the
specific requirements of its *Miranda* holding.

Petitioner's argument that he was placed in the
functional, and, therefore, legal, equivalent of the
*Miranda* situation asks us now to ignore com-
pletely that *Miranda* was grounded squarely in the
Court's explicit and detailed assessment of the
peculiar "nature and setting of . . . in-custody
interrogation," 384 US, at 445. That Courts of
Appeals have so read *Miranda* is suggested by
Chief Judge Lumbard in *United States v Caiello,*
420 F2d 471, 473 (CA 2, 1969):

"It was the compulsive aspect of custodial inter-
rogation, and not the strength or content of the
government's suspicions at the time the question-
ing was conducted, which led the court to impose
the *Miranda* requirements with regard to custodial
questioning."

*Mathis v United States,* [391 US 1; 88 S Ct 1503;
20 L Ed 2d 381 (1968)] directly supports this
conclusion in holding that the *Miranda* require-
ments are applicable to interviews with Internal

Revenue agents concerning tax liability, when the subject is in custody; the Court thus squarely grounded its holding on the custodial aspects of the situation, not the subject matter of the interview.

An interview with Government agents in a situation such as the one shown by this record simply does not present the elements which the *Miranda* Court found so inherently coercive as to require its holding. *Although the "focus" of an investigation may indeed have been on Beckwith at the time of the interview in the sense that it was his tax liability which was under scrutiny, he hardly found himself in the custodial situation described by the* Miranda *Court as the basis for its holding.* Miranda *implicitly defined "focus," for its purposes, as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."* 384 US, at 444. [425 US at 345-347. Some citations omitted, emphasis supplied.]

The final citation in this excerpt is to the text accompanying footnote 4 in *Miranda,* cited *ante,* p 387, which some courts read improperly. The emphasized material leaves no doubt that, pursuant to federal law, *Miranda* warnings need only be given where there is "custody" and that, absent custody, the fact that an individual has become the "focus" of an investigation does not trigger the *Miranda* requirement.

Therefore, any reliance on federal law for the imposition of the "focus" test in Michigan cases is error.

III

The remaining question posed by defendant is whether either art 1, § 17 of the Michigan Consti-

tution[6] or our prior case law requires that the
*Miranda* warnings be given at any time other than
when an individual is in custody or has been
otherwise deprived of his freedom in any signifi-
cant way.

### A

In our past interpretations of the *Miranda* rule,
even when in excess of what we now clearly note
to be the United States constitutional standard as
set forth in *Beckwith, supra,* we never grounded
those interpretations on art 1, § 17 of our constitu-
tion.[7] We decline to now convert our past misun-
derstandings of *Miranda* into an interpretation of
that provision.

The wording of the self-incrimination provisions
of our respective constitutions is nearly identical,
and, as we have previously said "It would be
disingenuous . . . not to admit that our standards
[in interpreting] the Michigan Constitution have
been largely influenced by decisions of the United
States Supreme Court." *Delta Charter Twp v Di-
nolfo,* 419 Mich 253, 276, n 7; 351 NW2d 831
(1984).

At the time of the drafting of our 1963 Constitu-
tion (pre-*Miranda*), the self-incrimination provision

---

[6]

> No person shall be compelled in any criminal case to be a
> witness against himself, nor be deprived of life, liberty or
> property, without due process of law. The right of all individu-
> als, firms, corporations and voluntary associations to fair and
> just treatment in the course of legislative and executive investi-
> gations and hearings shall not be infringed.

[7] See *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975); *People v
Ridley,* 396 Mich 603; 242 NW2d 402 (1976); *People v Brannan,* 406
Mich 104; 276 NW2d 14 (1979); *People v Paintman,* 412 Mich 518; 315
NW2d 418 (1982).

of the Fifth Amendment was only implicated when
an extrajudicial statement was found to have been
elicited involuntarily.

It is difficult to imagine that the drafters and
ratifiers, having adopted nearly word for word the
self-incrimination provision of the Fifth Amend-
ment, would have envisioned that a noncustodial
extrajudicial statement, regardless of voluntari-
ness or involuntariness, would result in a violation
of that provision, solely because the statement was
not preceded by the application of a prophylactic
rule that requires a recitation of the defendant's
rights.

Absent an indication that a noncustodial setting
clearly implicates compulsion, we would not feel at
liberty to consider such an expansion of the draft-
ers' most likely understanding of the meaning of
self-incrimination.

As we have also said before, "We have, on
occasion, construed the Michigan Constitution in a
manner which results in greater rights than those
given by the federal constitution, [citation omitted]
and where there is compelling reason, we will
undoubtedly do so again." *People v Nash,* 418
Mich 196, 215; 341 NW2d 439 (1983).[8] For the
reasons set forth below, this is not one of those
times.

---

[8] Appellee argues, citing *Paramount Pictures Corp v Miskinis,* 418
Mich 708; 344 NW2d 788 (1984), that the self-incrimination clause of
the Michigan Constitution may not be interpreted differently than the
self-incrimination clause of the United States Constitution. We note,
however, that *Paramount* dealt solely with the self-incrimination
clause in the context of civil discovery and that in that case we based
our holding in part on the fact that "[t]he precedents relied upon by
defendants [to support a separate interpretation of the Michigan
constitutional privilege were] distinguishable on the ground that they
involve[d] disclosures in the context of criminal proceedings." *Id.* at
726.

The case before us today deals with the nature of the privilege in
the criminal context.

B

In addition to his constitutional argument, defendant also suggests that the focus test must be applied in Michigan because, as a matter of case law, it constitutes stare decisis in this state. We note, however, that the Court of Appeals has long been split on this issue. See, e.g., *People v Wallach,* 110 Mich App 37; 312 NW2d 387 (1981) (applying the focus test); contra *People v Martin,* 78 Mich App 518; 260 NW2d 869 (1977); *People v Belanger,* 120 Mich App 752; 327 NW2d 554 (1982) (applying the custody test). Moreover, this split is in large measure the result of this Court's less than precise decisions regarding the *Miranda* rule. See *People v Reed,* 393 Mich 342; 224 NW2d 867 (1975), *People v Ridley,* 396 Mich 603; 242 NW2d 402 (1976), *People v Brannan,* 406 Mich 104; 276 NW2d 14 (1979), and *People v Paintman,* 412 Mich 518; 315 NW2d 418 (1982).

In light of the unsettled nature of this area of the law in our state, we find dubious the assertion that the focus test is controlling as stare decisis in Michigan. However, to the extent that it is so viewed, we are convinced for the reasons we will now describe that custody is an "undeniably better" test than is focus. *Abendschein v Farrell,* 382 Mich 510, 516; 170 NW2d 137 (1969).

In determining the proper scope of the prophylactic rule necessary to assure the protections of this provision we must determine the degree to which the competing standards correspond to the protective purpose of the rule.

The requirement that *Miranda* warnings be read has several purposes. First, to guard against the possibility that government agents may *compel* an individual, in violation of his constitutional rights, to make self-incriminating statements, i.e., to as-

sure that confessions and other incriminating statements that are made involuntarily are not used against them. As the United States Supreme Court stated in *Berkemer v McCarty,* 468 US 420; 104 S Ct 3138; 82 L Ed 2d 317 (1984):

> The purposes of the safeguards prescribed by *Miranda* are to *ensure* that the police do not coerce or trick captive suspects into confessing, to relieve the " 'inherently compelling pressures' " generated by the custodial setting itself, " 'which work to undermine the individual's will to resist,' " and as much as possible to free courts from the task of scrutinizing individual cases to try to determine, after the fact, whether particular confessions were voluntary. [*Id.* at 433. Emphasis in original.]

Another aspect of the *Miranda* rule is to ensure that where individuals are placed in a coercive setting, but ultimately not charged with a crime, the police respect such individuals' constitutional rights to be free of compulsion towards self-incrimination. Since courts by definition inquire only into the voluntariness of a *defendant's* statements, no specific judicial check exists to deter the police from applying coercive pressure and from denying counsel to those individuals subjected to custodial interrogation who are never ultimately charged with a crime. However, the requirement that incriminating statements made during custodial interrogation in which *Miranda* warnings were not given be suppressed protects more than criminal defendants. Since the interrogators cannot know in advance who will be charged with a given crime, all suspects must be given the warnings prior to custodial interrogation, thus relieving for all individuals the fear and indignity inherent in coercive police activities.

In a pre-*Miranda* article addressing the short-comings of a test based solely on voluntariness, a commentator observed that he

> share[d] the view that not many *innocent* men (at least those of average intelligence and educational background) are likely to succumb to [coercive techniques]. But how many *innocent* men are likely to be *subjected* to these methods? [What] would the American lawyer's reaction be if he had some notion of the price we pay in terms of human liberty and individual dignity? [Kamisar, *What is an involuntary confession?* in Police Interrogation and Confessions: Essays in Law and Policy, p 4.]

While "arrests for investigation" are constitutionally barred in this state,[9] the following passage from *Miranda* demonstrates that the Supreme Court was concerned generally with the fate of an innocent and ultimately uncharged suspect as well as that of the criminal defendant:

> A serious consequence of the present practice of the interrogation alleged to be beneficial for the innocent is that many arrests "for investigation" subject large numbers of innocent persons to detention and interrogation. In one of the cases before us, . . . *California v Stewart,* police held four persons, who were in the defendant's house at the time of the arrest, in jail for five days until defendant confessed. At that time they were finally released. Police stated that there was "no evidence to connect them with any crime." Available statistics on the extent of this practice where it is condoned indicate that these four are far from alone in being subjected to arrest, prolonged detention, and interrogation without the requisite probable cause. [384 US 482.]

[9] *People v Casey,* 411 Mich 179; 305 NW2d 247 (1981).

It is our view that the purposes of the *Miranda* rule are better served by a custody test than by a focus test. The mere fact that an individual has become the focus of an investigation does not subject him to any avoidable offense against his liberty or dignity.[10] It is only in the coercive atmosphere of custodial interrogation that he must be protected from improper police tactics. Similarly, the specter of involuntariness is not raised simply because the person being questioned is the prime suspect if the environment in which he is questioned is not coercive, i.e., if the suspect's freedom has not been significantly limited. The fact that an individual is the focus of an investigation does not, in and of itself, present any danger that involuntary statements will be made. Indeed, it is likely that a prime suspect may not even know that he has been so classified in the minds of the police. At the same time, the "focus" test may not protect interrogated individuals who are subjected to coercive tactics if they cannot yet be designated as the focus of the investigation.[11] This situation may have occurred in *People v Brannan, supra,* where a defendant, in custody on another charge, was questioned regarding a murder. This Court held, inter alia, that the defendant's confession which occurred after proper warnings was not tainted by the prewarning questioning because it had taken place prior to the time that the defendant became the focus of the investigation. Thus, custodial in-

---

[10] We recognize that being suspected of having committed a crime for which one is innocent can cause an obvious affront to one's dignity as well as a threat to one's liberty. However, absent prescience on the part of the police, this is an unavoidable, although we hope not too frequent, event. No action by this Court or any other can guard against an innocent individual becoming a bona fide suspect in a criminal investigation.

[11] See *Mathis v United States,* 391 US 1; 88 S Ct 1503; 20 L Ed 2d 381 (1968).

terrogations may have been held constitutional in the absence of *Miranda* warnings.

These considerations demonstrate that the custody test corresponds to the protected interests far more precisely than does the focus test which is both underinclusive and overinclusive. The custody test affords protection to those individuals requiring it where the focus test might fail to do so. In addition, the custody test does not decrease the likelihood that individuals being questioned in the absence of coercion will voluntarily provide answers. The focus test, on the other hand, may encourage silence by unnecessarily suggesting to potential witnesses that coöperation is risky, without any concomitant gains in the protection of criminal defendants from coercive police tactics or to society in general.

It can be argued that police officers should inform every person of whom they ask a question that the question need not be answered. However, whether this would have a socially beneficial effect is doubtful, and this approach was specifically, and with good reason, rejected in *Miranda:*

> General on-the-scene questioning as to facts surrounding a crime or other general questioning of citizens in the fact-finding process is not affected by our holding. It is an act of responsible citizenship for individuals to give whatever information they may have to aid in law enforcement. In such situations the compelling atmosphere inherent in the process of in-custody interrogation is not necessarily present. [384 US 477-478.]

Once it is recognized that it is proper for members of society to voluntarily answer appropriate questions of law enforcement officers, it is difficult to conceive why a line should be drawn which might encourage silence simply because the person being

questioned is the focus of a police investigation. It is desirable that such an individual also speak frankly and voluntarily to the police. However, he must never be put in a position where he feels that he must speak even though he prefers not to do so. Thus, we protect prime suspects through the reading of the *Miranda* warning, as we do any other individual, when he is in a situation in which he may perceive that he must speak against his will, i.e., during custodial interrogation. The purpose of the *Miranda* rule is to redress the disadvantage inherent in a custodial setting, not to create a confrontational atmosphere in the more neutral noncustodial environment.

We are, accordingly, of the view that the custody test is undeniably better suited to the task at hand than the focus test.

## IV

Nearly all states have adopted a custody test for purposes of the *Miranda* warnings.[12] Many courts have also defined a list of factors relevant to the determination whether at the time of interrogation the suspect "has been taken into custody or otherwise deprived of his freedom of action in any significant way."[13] *Miranda, supra,* p 444. Because the defense has not disputed the trial court's conclusion that the defendant was not in custody at the time of the questioning, we decline to define such a list ourselves.

In the instant case, the questioning was brief and took place in defendant's own office, in a

[12] Our research indicates that only one state, Oklahoma, may still employ the focus test. See *Coleman v State,* 668 P2d 1126 (Okla Crim App, 1983) (applying a focus test); contra *Little v State,* 627 P2d 445 (Okla Crim App, 1981) (applying a custody test).

[13] See, e.g., 1 LaFave & Israel, Criminal Procedure, § 6.6(d)-(f), pp 494-499.

building which he owned, in the presence of other individuals known to him. In other words, other than the mere fact that he was being questioned and that the questioning was being conducted by three individuals, only one of whom was a government agent, there was no basis for defendant to reasonably believe that he was in custody or that his freedom of action was significantly limited. We therefore hold that at the time of the questioning it was not necessary that defendant be informed of his *Miranda* rights.

The Court of Appeals decision is affirmed, and the case is remanded for trial.

RILEY, C.J., and LEVIN, CAVANAGH, BOYLE, ARCHER, and GRIFFIN, JJ., concurred with BRICK-LEY, J.

ARCHER, J. I concur and have signed the majority opinion. I write to add that I would inquire, looking at all the relevant circumstances, whether, at the time of the interrogation, a reasonable person[1] would have believed that "he ha[d] been taken into custody or otherwise deprived of his freedom of action in any significant way." *Miranda v Arizona,* 384 US 436, 444; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

CAVANAGH, J., concurred with ARCHER, J.

[1] "[T]he only relevant inquiry is how a reasonable man in the suspect's position would have understood his situation." *Berkemer v McCarty,* 468 US 420, 442; 104 S Ct 3138; 82 L Ed 2d 317 (1984).