# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellee,

v

STEIN SAMUEL NOWICKI,

Defendant-Appellant.

UNPUBLISHED
April 21, 2015

No. 319348
Kent Circuit Court
LC No. 12-009636-FH

Before: METER, P.J., and SAWYER and BOONSTRA, JJ.

PER CURIAM.

Defendant Stein Samuel Nowicki appeals by right his conviction of one count of killing or torturing an animal, MCL 750.50b. We affirm.

## I. PERTINENT FACTS AND PROCEDURAL HISTORY

On August 22, 2014, defendant's neighbor, Dorothy Sparkman, contacted the Grand Rapids Police Department and, according to the police report, reported "neighbor trouble." Shortly after 8:00 p.m., two police officers were dispatched to Sparkman's home, who reported that defendant had shot a cat with a BB gun and that it was in her backyard. The officers located the cat and observed that, although alive, it was breathing laboriously and was paralyzed. The officers proceeded to defendant's house. In response to the officers' knocks, defendant appeared at the door, opened it, and refused a request to step out onto the porch. The officers then escorted defendant onto the porch, handcuffed him, and read him his Miranda[1] rights. Defendant admitted to shooting at the cat because the cat was a nuisance; however, he stated that he was only trying to scare the cat. The officers sought permission to enter defendant's house to retrieve the BB gun; defendant initially denied that request. One of the officers then stated that they could get a search warrant for the house, if necessary. At that point, defendant allowed the officers into the home, told them where to find the gun, and they retrieved it from the house. Shortly thereafter, the cat was euthanized by a veterinarian, due to the injuries it had suffered upon being shot. Police released defendant and allowed him to return to his home. On August 24, 2012, he voluntarily went to the police department and wrote out a statement,

---

[1] *Miranda v Arizona*, 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966).

admitting that he had shot the cat because it was "a pestilence." He also admitted that after he shot the cat, he "nudged it with his foot," picked it up by its tail, and threw it into a garbage can.

After defendant initially appealed his conviction, this Court granted his motion to remand to file a motion for a new trial in the trial court based on his claims of ineffective assistance of counsel.[2] The trial court held a *Ginther*[3] hearing and subsequently denied defendant's motion for a new trial. This appeal followed.

## II. FOURTH AMENDMENT CHALLENGE

Defendant first argues that his BB gun was not admissible into evidence because the gun was obtained after an illegal seizure of defendant and because the officers' search for the gun was based on coerced consent. We disagree.

Both the United States and Michigan Constitutions prohibit unreasonable searches and seizures. US Const, Am IV; Const 1963, art 1, § 11. Generally, a search or seizure conducted without a warrant is unreasonable unless the search or seizure falls within a "specifically established and well-delineated" exception to the warrant requirement. *People v Champion*, 452 Mich 92, 98; 549 NW2d 849 (1996). One of the recognized exceptions to the warrant requirement is custodial detention or seizure of a suspect based on probable cause to arrest the suspect. *Id*. at 115. "Probable cause to arrest exists where the facts and circumstances within an officer's knowledge and of which he has reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id*. A police officer may arrest a person without a warrant if a felony has been committed and the officer has reasonable cause to believe the person committed it. MCL 764.15(1)(b). It is a felony to commit a reckless act knowing or having reason to know that the act will cause an animal to be killed, tortured, mutilated, maimed, or disfigured. MCL 750.50b.

In this case, Sparkman contacted the police by telephone reporting trouble with her neighbor, and told the responding officers that defendant had shot a cat with his BB gun, describing the gun as a black rifle. Sparkman also reported that defendant had shot other animals previously, and she described defendant and provided his address. Officers observed the injured cat and immediately went to defendant's address. Defendant appeared at the door, matching the given description. These facts and circumstances known to the officers at the time they detained defendant on his front porch were sufficient to lead a person of reasonable caution to believe that a felony had been committed and that defendant had committed it. The record supports that at the time the officers detained defendant they had probable cause to arrest him, and thus could properly seize and detain him without a warrant. *Champion*, 452 Mich at 115. Further, defendant's argument that the police lacked probable cause to arrest him, because the only

---

[2] *People v Nowicki*, unpublished order of the Court of Appeals, entered April 30, 2014 (Docket No. 319348).

[3] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

information that the police had that he had committed a crime was an anonymous tip, is not supported by the record. In the first place, the tip was not anonymous; the responding officers spoke with Sparkman, who provided additional information. Further, the tip was corroborated by the presence of the injured cat. When even an anonymous tip is corroborated by additional information, it can provide probable cause to support an arrest. See *People v Walker*, 401 Mich 572, 579-580; 259 NW2d 1 (1977).

In addition, the fact that defendant was seized from the doorway of his home does not alone make his detainment illegal. See *United States v Santana*, 427 US 38, 42; 96 S Ct 2406; 49 L Ed 2d 300 (1976). Defendant was standing in the doorway, with the door open, conversing with officers. Thus, for the purposes of the Fourth Amendment, defendant "was not merely visible to the public but was [] exposed to public view, speech, hearing, and touch" and "not in an area where she had any expectation of privacy. *Id*. At the evidentiary hearing, defendant testified that after he opened the door, he stepped back approximately three feet into his home. However, the trial court found that this testimony was not credible and made a factual finding that "defendant was in the doorway when he first spoke with police." The trial court was permitted to make this credibility determination, and this Court cannot substitute its judgment for that of the trial court. *People v Cress*, 468 Mich 678, 692, 694; 664 NW2d 174 (2003). Thus, defendant was in a public place at the time of his seizure, and defendant's warrantless seizure from his doorway based upon probable cause did not violate the Fourth Amendment. See *Santana*, 427 US at 42.

In addition, the fact that defendant was subsequently handcuffed did not make his detainment illegal. *People v Zuccarini*, 172 Mich App 11, 14; 431 NW2d 446 (1988). At the time the officers first approached defendant, he was hostile, and officers knew he possessed a weapon but did not know where it was located. It was therefore important that the officers minimize the risk of harm to both the police and any other occupants of defendant's home. Under these circumstances, handcuffing defendant was a reasonable, limited intrusion on defendant's liberty for safety reasons, and the act of handcuffing defendant did not make his detainment illegal. *Id*.

Defendant's argument that the gun was inadmissible because the search for the gun was based on coerced consent is also not supported by the record. An exception to the warrant requirement exists when a person gives voluntary consent to a search. *People v Roberts*, 292 Mich App 492, 503; 808 NW2d 290 (2011). Whether a person has given voluntary consent to a search is determined by considering the totality of the circumstances and is "primarily a question of credibility." *Id*. at 503. Where "resolution of a disputed factual question turns on the credibility of witnesses or the weight of the evidence, we will defer to the trial court, which had a superior opportunity to evaluate these matters." *Id*. at 503-504 (internal citations omitted).

In this case, an officer testified that he asked defendant where the gun was, and defendant initially refused to allow officers to enter the home. The officer then advised defendant that he could obtain a search warrant. Defendant subsequently changed his mind and said that he would accompany the officers into the residence to retrieve the gun; they all went inside and defendant told the officers where to find the gun. At the evidentiary hearing, defendant testified that he only permitted the officers to enter the home after one of the officers threatened to obtain a search warrant *and* to execute the warrant in an inconvenient manner. The trial court found that

there was not any credible evidence of coercion. We defer to that credibility finding. *Cress*, 468 Mich at 692, 694; *Roberts*, 292 Mich App at 503-504. Moreover, there was no evidence to support a finding that on the night in question, defendant was unable to make a free choice or was unaware of his right to refuse consent to the search. The totality of circumstances surrounding defendant's consent supports a finding that defendant voluntarily consented to the search that produced the gun, and that the gun was admissible. *Roberts*, 292 Mich App at 506-507.

## III. FIFTH AMENDMENT CHALLENGE

Defendant also argues that his statements to the police on August 22, 2012 were inadmissible. To the extent defendant argues that these statements were inadmissible because he was illegally detained at the time he made these statements to the police, we find that argument without merit as discussed above. However, defendant also argues that even if he was legally detained on his front porch on August 22, 2012, his statements to the police are still inadmissible because the statements were obtained before he was read his *Miranda* rights. We disagree.

"The Fifth Amendment of the United States Constitution guarantees that the government cannot compel a defendant in a criminal case to testify against himself. This protection has been applied to the states through the Due Process Clause of the Fourteenth Amendment. In addition, Art 1, § 17 of the Michigan Constitution affords defendants a corresponding state constitutional right to be free from compelled self-incrimination." *People v Cheatham*, 453 Mich 1, 9; 551 NW2d 355 (1996) (citations omitted). Therefore, "*Miranda* warnings" were developed through the common law as "measures to insure that the [suspect's] right against compulsory self-incrimination [i]s protected." *Id*. at 12.

At trial, an officer testified that after defendant was escorted to the front porch and placed in handcuffs, he advised defendant of his *Miranda* rights, defendant stated that he understood his rights, and defendant agreed to speak with officers. The police report corroborated this testimony. However, at the *Ginther* hearing, defendant testified that once he was on the front porch of his house, the police officers immediately placed him in handcuffs, started questioning him about the cat and his gun, and *then* read him his *Miranda* rights. The trial court made the factual finding that defendant "was read his *Miranda* rights prior to any substantive questioning." It was permitted to evaluate the credibility of the witnesses, and this Court cannot substitute its judgment for that of the trial court. *Cress*, 468 Mich at 692, 694.[4]

---

[4] We note that to the extent defendant argues that his written statement on August 24, 2012 was inadmissible because it followed his illegal detainment, defendant has abandoned this argument by failing to provide any analysis in the text of his brief on appeal. *People v Payne*, 285 Mich App 181, 188; 774 NW2d 714 (2009). However, even if we were to consider this argument, it is without merit because defendant's detention and initial statements on August 22, 2012 were legal and admissible. Further, there is no evidence that defendant was detained or in custody when he provided his written statement; rather a police detective testified that defendant came to the station voluntarily and completed a written statement in the lobby of the police department.

## V. INEFFECTIVE ASSISTANCE OF COUNSEL

Finally, defendant argues that he was denied the effective assistance of counsel at trial. We disagree. To demonstrate ineffective assistance of counsel, "the defendant must show that (1) defense counsel's performance was so deficient that it fell below an objective standard of reasonableness, and (2) there is a reasonable probability that defense counsel's deficient performance prejudiced the defendant." *People v Heft*, 299 Mich App 69, 80-81; 829 NW2d 266 (2012) (citation omitted). To establish prejudice, defendant must show that "but for defense counsel's errors, the result of the proceeding would have been different." *Id*. at 81.

Defendant argues that he was denied the effective assistance of defense counsel because his counsel did not to move to suppress the BB gun and the statements made by defendant on August 22 and 24, 2012. However, after the hearing, the trial court found that because the statements and the BB gun were admissible, a motion to suppress with regard to any of this evidence would not have had merit, and defendant could not prevail on his claim that his counsel was ineffective for failing to bring such a motion. We agree, for the reasons stated above. Defendant's counsel was "not required to advocate a meritless position." *People v Snider*, 239 Mich App 393, 425; 608 NW2d 502 (2000). The trial court properly found that defendant's counsel's performance with regard to this evidence was not so deficient that it fell below an objective standard of reasonableness. *Heft*, 299 Mich App at 80-81.

Defendant also alleges that defense counsel was ineffective because he elected not to introduce medical evidence regarding the fact that defendant's girlfriend's son suffered from asthma and allergies. Decisions regarding what evidence to present are generally presumed to be matters of trial strategy. *People v Horn*, 279 Mich App 31, 39; 755 NW2d 212 (2008). Defense counsel has wide discretion as to matters of trial strategy because "counsel may be required to take calculated risks to win a case," *Heft*, 299 Mich App at 83. At trial, defendant argued that he had cause to shoot the cat because his girlfriend's son is allergic to cats and has asthma. However, at the evidentiary hearing, defense counsel testified that he had spoken with the child's physician, who stated that the child's allergy to cats was not severe and that although exposure to a cat may "produce some discomfort," the child would not have a "severe or overly harsh reaction" to a cat. After speaking with the physician, defense counsel determined that that testimony from the physician would not be helpful and that it was more effective to have defendant testify regarding how severe he thought the allergy was and why he was trying to keep the cat away from his home. This strategic decision allowed defense counsel to present to the jury evidence of the child's allergies, while also exploring defendant's intent and state of mind with regard to shooting the cat.

The trial court properly found that the decision not to introduce medical evidence was strategic and consistent with the defense theory of the case. *Id*. at 84. Defense counsel's decision does not constitute ineffective assistance of counsel simply because it did not work, *id*., and the trial court properly found that defense counsel's performance with regard to this evidence was not so deficient that it fell below an objective standard of reasonableness. *Id*. at

---

*Miranda* concerns are only implicated when a defendant is in custody. See *People v Hill*, 429 Mich 382, 391; 415 NW2d 193 (1987).

80-81. Further, defendant has not demonstrated that the lack of medical evidence concerning the extent of his child's allergies prejudiced his case; as stated, the jury was allowed to hear that the child was allergic to cats. *Heft*, 299 Mich App at 80-81. Defendant's case may in fact have been weakened by presenting the jury with evidence that the child's allergy was not severe. We therefore conclude that defendant did not receive ineffective assistance of counsel.

Affirmed.

/s/ Patrick M. Meter
/s/ David H. Sawyer
/s/ Mark T. Boonstra