# Order

Michigan Supreme Court
Lansing, Michigan

June 14, 2019

Bridget M. McCormack,
Chief Justice

David F. Viviano,
Chief Justice Pro Tem

Stephen J. Markman
Brian K. Zahra
Richard H. Bernstein
Elizabeth T. Clement
Megan K. Cavanagh,
Justices

158506

PEOPLE OF THE STATE OF MICHIGAN,
      Plaintiff-Appellant,

v

JOHN EDWARD BARRITT,
      Defendant-Appellee.

SC: 158506
COA: 341984
Genesee CC: 15-038224-FC

_____/

On order of the Court, the application for leave to appeal the August 9, 2018 judgment of the Court of Appeals is considered, and it is DENIED, because we are not persuaded that the question presented should be reviewed by this Court.

ZAHRA, J. (*dissenting*).

I would grant leave to appeal, both because the Court of Appeals opinion is published and because the dissenting Court of Appeals Judge BOONSTRA makes a compelling case that defendant was not in "custody" and therefore the interview did not rise to the level of a custodial interrogation that requires disclosure of *Miranda*[1] rights.

This case arises out of the death of defendant's girlfriend, Amy Wienski, whose body was dumped into the Flint River. Her car was burned in Mt. Morris Township. After she was reported missing, the Calhoun County Sheriff's Department obtained and executed a search warrant at her home. During the search, defendant arrived at the victim's home, where he was interviewed for roughly 10 minutes by detectives from the Calhoun County Sheriff's Department. Detectives then asked defendant if he would go to the village of Homer, where the Calhoun County Sheriff had a satellite office, so they could talk in a better environment. Defendant agreed and accepted law enforcement's offer of a ride to the satellite office.[2] Defendant rode unrestrained in the back seat of a marked deputy sheriff's car.

---

[1] *Miranda v Arizona*, 384 US 436 (1966).

[2] Defendant was driven to the victim's home by Ronald Greenway, who drives people for compensation. Defendant claimed that he had very recently met Greenway. Greenway independently agreed to meet the deputies in Homer. The investigating deputies did not suggest that defendant not ride to Homer with Greenway, and defendant did not ask or otherwise indicate that he preferred to ride to Homer with Greenway.

Upon arrival at the satellite office, a 90-minute interview ensued. The door to the interrogation room was not locked. Moreover, the "interview" was largely casual. For example, defendant was offered a beverage and felt so comfortable in the setting that he jokingly asked for a beer. Similarly, at one point, defendant was left alone in the room with a canine officer, Brad Hall, and his dog. Hall and defendant discussed dogs and defendant interacted with Hall's canine. Defendant joked with Hall about his canine, suggesting that the dog could probably be mean if Hall commanded him to be. Hall responded that the dog would "blow you right off your feet if I send him."

Toward the end of the interview it became apparent to defendant that the deputies did not believe that he was being truthful during the interview. Detectives asked defendant how he would fare if he underwent a polygraph examination. Defendant responded that he would pass, but that he was not going to take one because the detectives were clearly pointing their fingers at him. He then said, "I think I need a lawyer." The detectives told defendant that he was not under arrest. Defendant then asked if they could finish the interview and the detectives responded that they could finish at any time. Defendant equivocated, indicating that he was not going to continue with the questioning but then expressing a desire to help the detectives find Wienski. One of the detectives told him that he needed to "man up" and reveal what happened to her. He denied knowing, indicating that he did not like how the interview was going and that he was going to have to get a lawyer. He was handed over to the Mt. Morris Township Police Department, which was investigating the destruction of Ms. Wienski's vehicle. At no point before or during the interview was defendant notified of his Miranda rights.

Officer Hall then told defendant that the most important thing was to "get this thing taken care of" and that defendant needed to help the detectives by being as truthful as possible. He told defendant that the truth always comes out and the sooner it comes out, the easier it is. Hall also told defendant that it looks bad when someone goes "hard core" and holds back information until the end. He told defendant that the detectives knew the answers to 75 percent of the questions they ask and that he could see on defendant's face that defendant knew information that he was not revealing. Defendant denied this. The interviewing detectives reentered the room and defendant continued to deny any knowledge of what happened to Wienski. At this time, defendant was informed he was under arrest and would be transported to Genesee County.

Defendant was later charged with felony murder, carjacking, second-degree arson, fourth-degree arson, and tampering with evidence. The trial court granted defendant's motion to suppress the interview from evidence at trial. The Court of Appeals granted the prosecution's application for leave to appeal and a majority of the panel, in a published opinion, affirmed the trial court's decision.[3] The prosecutor sought leave to

---

[3] *People v Barritt*, 318 Mich App 662 (2017), vacated in part 501 Mich 872 (2017).

appeal, and this Court vacated that part of Court of Appeals' holding that defendant was subjected to custodial interrogation and remanded the case to the trial court for a determination of "(1) whether a reasonable person would have felt that he was not at liberty to terminate the interrogation and leave; and (2) whether the environment presented the same inherently coercive pressures as the type of station house questioning at issue in *Miranda v Arizona*[.]"[4]

On remand, the trial court again suppressed defendant's statements and the Court of Appeals, in a split decision, affirmed in a published opinion.[5]  The prosecutor again seeks leave to appeal in this Court.  The Attorney General has filed an amicus brief in support of the prosecution.

In *Miranda*, the United States Supreme Court held that if there is a custodial interrogation of an individual and it is not preceded by adequate warnings of the individual's rights against self-incrimination, then any incriminating statements made during that interrogation may not introduced in evidence at an accused's criminal trial.[6] The Court also explained that custodial interrogation is to be interpreted as "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way."[7]  In contrast, if the interview is not deemed to be a custodial interrogation, then a statement made to law enforcement officers may be admitted into evidence regardless of whether *Miranda* warnings were given.[8]  "Custody" depends upon whether undue coercive pressure results " 'from the interaction of custody and official interrogation.' "[9]

The first step in determining whether the individual is in custody is to evaluate whether "a reasonable person [would] have felt he or she was not at liberty to terminate the interrogation and leave."[10]  Not all restraints on freedom of movement amount to

---

[4] *People v Barritt*, 501 Mich 872 (2017).

[5] *People v Barritt*, 325 Mich App 556 (2018).  On December 28, 2017, the trial court granted a stay of the trial, in light of the prosecutor's appeal of its decision.

[6] *Miranda*, 384 US at 444-445.

[7] *Id*. at 444.

[8] See *People v Hill*, 429 Mich 382, 391 (1987).

[9] *People v Elliott*, 494 Mich 292, 306 (2013), quoting *Maryland v Shatzer*, 559 US 98, 112 (2010) (quotation marks, citation, and emphasis omitted).

[10] *Howes v Fields*, 565 US 499, 509 (2012) (quotation marks and citation omitted); see also *Yarborough v Alvarado*, 541 US 652, 663 (2004); *Elliott*, 494 Mich at 305.

custody.[11] There are several relevant factors used to evaluate these situations, such as the location of the questioning, duration, statements made during the questioning, the presence or absence of physical restraints during the questioning, and whether the interviewee was released at the end of questioning.[12] The determination relates to whether the relevant environment of the interview " 'present[ed] the same inherently coercive pressures as the type of station house questioning at issue in *Miranda*.' "[13] "That atmosphere is said to generate 'inherently compelling pressures which work to undermine the individual's will to resist and to compel him to speak where he would not otherwise do so freely.' "[14]

In this case, none of the relevant factors set out by the applicable caselaw lead to the conclusion that defendant was in "custody." Although defendant was questioned at a small satellite office of the Calhoun County Sheriff by two deputy sheriffs, defendant was not subjected to same type of coercive environment present in *Miranda*. The duration of the interview was short. The door to the interrogation room was not locked. Defendant was not restrained. The tone of the conversation was largely casual. Defendant was offered a beverage and felt so comfortable in the setting that he jokingly asked for a beer. He then asked for a soft drink and was provided with one. Defendant petted the canine officer's dog and joked with the canine officer. The setting and tone of the interview simply lacked the kind of coercive nature that lends itself to coerced confessions.

Moreover, defendant's references to counsel were equivocal and followed by defendant-initiated conversation with law enforcement. Notably, defendant was not interrogated about the whereabouts of the victim or her car after defendant mentioned needing a lawyer. Because serious concerns exist regarding whether defendant was

---

[11] *Illinois v Perkins*, 496 US 292, 296 (1990); *Berkemer v McCarty*, 468 US 420, 437 (1984); *Hill*, 429 Mich at 397-398; *Elliott*, 494 Mich at 302-303.

[12] *Howes*, 565 US at 509.

[13] *Elliott*, 494 Mich at 308, quoting *Howes*, 565 US at 509.

[14] *Perkins*, 496 US at 296, quoting *Miranda*, 384 US at 467.

subjected to a custodial interrogation that would trigger a right to be informed of *Miranda* rights, I would grant leave to appeal to assess the accuracy of the published Court of Appeals opinion.

MARKMAN, J., joins the statement of ZAHRA, J.



I, Larry S. Royster, Clerk of the Michigan Supreme Court, certify that the foregoing is a true and complete copy of the order entered at the direction of the Court.

June 14, 2019



s0611

Clerk