******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************************

D'AURIA, J., concurring in part and concurring in the judgment. I concur in the court's judgment affirming the trial court's judgment of conviction and in most of the majority's opinion and analysis. In particular, I conclude that, under federal constitutional law, the defendant, Bernard A. Brandon, has not met his burden of demonstrating that he was "in custody" during any part of the interrogation conducted by two police officers, Lieutenant Christopher LaMaine and Detective Ada Curet, at the office of the defendant's probation officer. See, e.g., *State* v. *Mangual*, 311 Conn. 182, 192 n.9, 85 A.3d 627 (2014) ("[t]he defendant bears the burden of establishing custodial interrogation").

I write separately for two reasons. First, although we consistently have stated that the custodial determination is made considering " 'the totality of the circumstances' "; *State* v. *Edwards*, 299 Conn. 419, 428, 11 A.3d 116 (2011); in my view, that does not mean that a defendant cannot be in custody during one or more parts of the interrogation and not during others. In the present case, I believe there were two distinct parts of LaMaine and Curet's interrogation of the defendant— one that occurred before and the other that occurred after the defendant was advised that he was free to leave—and our review should examine the totality of each part of the interrogation. Second, I continue to believe that trial courts, appellate courts and parties are not served well by talismanic recitations of multifactor tests that this and other courts have announced for the purpose of measuring constitutional questions. The present case is a good example.

As to the first reason why I write separately, I note that a defendant may not be in custody at the beginning of a police interrogation but may be determined to be in custody as the interrogation progresses. See, e.g., *Reinert* v. *Larkins*, 379 F.3d 76, 79 (3d Cir. 2004) (holding that defendant, while being transported in ambulance in presence of police officer, was not in custody when he made first statement but was in custody when he made second statement), cert. denied sub nom. *Reinert* v. *Wynder*, 546 U.S. 890, 126 S. Ct. 173, 163 L. Ed. 2d 201 (2005); see also *United States* v. *Martinez*, 602 Fed. Appx. 658, 659 (9th Cir. 2015) (holding that District Court improperly suppressed statements defendant made to police during first minute and forty-six seconds of interrogation because defendant was not in custody during that time). There is no reason that the opposite cannot be true: an interviewee may be met with circumstances that could constitute custody at the beginning of an interrogation, which might progress to a point where he might feel free to leave or he consents to further interrogation. Thus, at times, the issue of cus-

tody might call for a statement-by-statement examination, considering the circumstances at the time of each statement that the defendant seeks to suppress. See, e.g., *United States* v. *Thompson*, 976 F.3d 815, 824 (8th Cir. 2020) (determining custody based on relevant factors at time each statement was made during course of single traffic stop); *Locke* v. *Cattell*, 476 F.3d 46, 52 (1st Cir.) (dividing interrogation into two parts and deciding custody for each part separately), cert. denied, 552 U.S. 873, 128 S. Ct. 177, 169 L. Ed. 2d 121 (2007).

Upon my review of the record in the present case, I find there to be two distinct parts to the interrogation at issue, each requiring separate examination: the first twenty-one minutes before LaMaine advised the defendant that he was not under arrest and could leave, and the remainder of the interrogation. Neither the trial court nor the majority makes this distinction, which, in my opinion, is critical to the custody analysis in this case. Specifically, I agree with the majority, for the reasons it states, that the defendant was not in custody during the second portion of the interrogation. I cannot fully agree with the majority's analysis regarding the first part of the interrogation, however, because, in my view, several of the factors that it considers in "the totality of circumstances" have little or no relevance to the question of custody at that time.

It is undisputed that, from the time he arrived at the interrogation room, accompanied by Peter Bunosso, the supervisor of the defendant's probation officer, until the twenty-one minute mark of the interrogation, the defendant was given no *Miranda*[1] warnings and was never advised that he was free to leave or that he would not be arrested at the end of the interrogation. During those twenty-one minutes, in response to the officers' questioning, the defendant indicated that he had received a phone call from the victim on the night in question and acknowledged that the victim had asked to meet at a social club known as Robin's. The defendant denied that he went "down that way," however. The defendant then admitted that he had "most likely" driven a route that took him directly past Robin's at approximately 8:33 p.m. on the night of the murder. That admission placed the defendant momentarily in front of Robin's at the approximate time of the shooting. The defendant also acknowledged that, when he drove past Robin's, he knew the victim was there. The defendant continued to maintain, however, that he "rolled down through there" and did not see the victim. Although the defendant ultimately made more inculpatory statements, both after being told he could leave the interrogation at any time and during his second interview at the police station, the statements just recounted were themselves inculpatory and were ultimately used against the defendant at trial.

I consider the question of whether the defendant was

in custody during the first twenty-one minutes of the interrogation a much closer question than whether he was in custody during the balance of the interrogation. In fact, I would have my doubts that the defendant was not in custody during those first twenty-one minutes were it not for the abundant federal case law holding that probation status does not create the level of coercion required to transform a noncustodial interrogation into a custodial one unless the defendant's probation officer orders him to attend an interview with the police or threatens that his probation would be violated if he refused the meeting. See, e.g., *Minnesota* v. *Murphy*, 465 U.S. 420, 426, 435, 104 S. Ct. 1136, 79 L. Ed. 2d 409 (1984). In light of this case law, I agree with the majority that the defendant was not in custody during the first twenty-one minutes of the interrogation. Specifically, I ultimately agree with the majority that the defendant did not sustain his burden of demonstrating that he was ordered, directed, or threatened to report to an interrogation. Without such evidence, and consistent with the great weight of federal case law, I cannot conclude that the defendant's status as a probationer establishes that he was in custody even before he was advised that he was free to leave at the twenty-one minute mark of the interrogation. In addition to the defendant's failure to offer any evidence that he was threatened or ordered to attend the interrogation, I believe the following facts, as discussed by the majority, along with facts the defendant did not prove, demonstrate sufficiently for me that the defendant was not restrained to the degree associated with a formal arrest during the first twenty-one minutes of the interrogation.

First, the defendant failed to offer any evidence that he objected to accompanying his probation officer, Shavonne Calixte, to Bunosso's office to meet the police officers.[2] Moreover, the tone and tenor of the interrogation were cordial, the defendant was not handcuffed or physically restrained, and the police officers did not physically threaten him, use force, or brandish their weapons.

Nevertheless, in reaching this conclusion, I note that I do not agree that all of the factors that the majority addresses are relevant to determine the issue of custody during the first twenty-one minutes of the interrogation. This, in turn, leads to the second reason why I write separately—to once again caution that I see danger in our overreliance on multifactor tests for undertaking such a " 'slippery' " task as measuring whether an individual is in custody. *State* v. *Mangual*, supra, 311 Conn. 193;[3] see also *State* v. *Januszewski*, 182 Conn. 142, 158, 438 A.2d 679 (1980) ("[w]hat constitutes police custody for purposes of the *Miranda* warnings is not always self-evident") (overruled in part on other grounds by *State* v. *Hart*, 221 Conn. 595, 605 A.2d 1366 (1992)), cert. denied, 453 U.S. 922, 101 S. Ct. 3159, 69 L. Ed. 2d 1005 (1981). Although a list of factors can be useful as an

issue spotting exercise, and reviewing courts (including this one) always note that the list is "nonexclusive," in practice, courts and litigants are inclined to use the factors as a checklist or as a point of comparison between the present case and cases in which a court has held that the defendant was or was not in custody based on particular facts. A too "heavy focus on enumerated factors, or comparisons to other precedents, may eclipse the ultimate inquiry before the court, which is case specific: whether a reasonable person in the defendant's position would believe that there was a restraint on [his] freedom of movement of the degree associated with a formal arrest." (Internal quotation marks omitted.) *State* v. *Castillo*, 329 Conn. 311, 341, 186 A.3d 672 (2018) (*D'Auria, J.*, dissenting).

In my view, the trial court's and the majority's reliance on certain of the *Mangual* factors illustrates not only the limits of a multifactor test but also the need to conduct our custody analysis on a statement-by-statement basis. Rather than look at the factors truly relevant to the circumstances at issue, both the trial court and the majority rely heavily on a survey of all of these factors. Although many of the factors that the majority relies on in holding that, as a whole, the defendant was not in custody during the entirety of the police interrogation also weigh in favor of holding that he failed to meet his burden of showing that he was in custody during both the first twenty-one minutes of the interrogation and the remainder of the interrogation, not all factors apply to both analyses. For example, I find the majority's reliance on certain factors—such as the number of times the defendant was told he was free to leave (seven), the fact that the interview lasted only ninety minutes and that he was ultimately not arrested after that interview—to be irrelevant to the question of whether he was in custody during the first twenty-one minutes of the interrogation. I address each of these factors in turn.

I agree with the majority that the fact that the defendant was advised—and advised repeatedly—that he was free to leave the interrogation room weighs heavily against the defendant's being in custody for the second portion of the interrogation. The defendant continued to answer questions despite being told he was free to leave and not under arrest. But he was never told this during the first twenty-one minutes of the interrogation. If conditions or circumstances were such that we might conclude that a defendant was in custody early in the interrogation, a belated advisement that he could leave of his own free will would not, in my view, cure the earlier custodial circumstance. See *People* v. *Barritt*, 325 Mich. App. 556, 570, 574–75, 926 N.W.2d 811 (2018) (holding that defendant was in custody when majority of questioning occurred before police told defendant he was not under arrest), appeal denied, 928 N.W.2d 224 (Mich. 2019). Thus, in my view, the officers' belated

statements that the defendant was not under arrest and free to leave the interrogation have no weight in our custody determination regarding the first twenty-one minutes of the interrogation.

Nor does the fact that the interrogation lasted "only" ninety minutes warrant much, if any, emphasis in analyzing whether the defendant was in custody during the first twenty-one minutes. Although the duration of the interrogation might, in some cases, assist a court in determining the custody question, including whether the interview was fleeting or lasted what anyone might objectively consider to be a "long" time, this factor seems to serve only as a comparator among reported decisions. I submit that it is used as such because it lends itself to an objective number, which is easy to compare to the case at hand. "That courts and litigants will seek to highlight or explain away certain factors, or compare and contrast the relevant factors in one case to those considered in another case, is a predictable result of court developed multifactor tests, including the *Mangual* factors for measuring custody." *State* v. *Castillo*, supra, 329 Conn. 341 (*D'Auria, J.*, dissenting).

For example, the majority concludes that this factor does not weigh in favor of custody because this court previously has held that a defendant was not in custody despite a two and one-half hour interrogation. See *State* v. *Pinder*, 250 Conn. 385, 414, 736 A.2d 857 (1999). Because, however, a suspect in most instances does not know when the interrogation will end and does not know the length of other interrogations that were determined to be custodial or noncustodial in reported cases, we cannot credit the objectively reasonable person in the defendant's circumstances with such knowledge, and, thus, this fact is of very limited use in measuring whether the defendant was restrained to the degree associated with a formal arrest. See *United States* v. *Griffin*, 922 F.2d 1343, 1348 (8th Cir. 1990) ("[t]he length of the interrogation has been a[n] . . . undeterminative factor in the analysis of custody"). Moreover, to the extent that this factor shows that the interrogation at issue did not last an objectively long time as a whole, this evidence is irrelevant to whether the defendant was in custody during the first twenty-one minutes of the interrogation when he had no knowledge of how much longer the interrogation would last. Thus, this factor plays no role in my determination of whether the defendant has met his burden of showing that he was in custody during the first twenty-one minutes of the interrogation. Nevertheless, the absence of this factor does not undermine my agreement with the majority that the defendant has failed to satisfy this burden.

Similarly, regardless of the fact that the defendant was not told that he was free to leave or was not under arrest during the first twenty-one minutes of the interrogation, the fact that he was not arrested at the end of

the interrogation adds nothing to support a determination that he was not in custody during the first twenty-one minutes of the interrogation. Even if he is not arrested at the end of an interrogation, a defendant has no idea during the interrogation if he will be arrested. The only definitive way he will know if he is under arrest is either at the end of the interrogation, when the police officers decide whether to arrest him, or if he tries to leave before the interrogation is over. Even if that were minimally relevant to whether the circumstances of the interrogation as a whole were akin to an arrest,[4] I fail to see how this factor shines any light on the question of whether the circumstances of the interrogation were akin to a formal arrest during the first twenty-one minutes of the interrogation.

Nevertheless, I agree with the majority that the defendant has not sustained his burden of proving that he was in custody either during the first twenty-one minutes or during the second portion of the interrogation.

Accordingly, I respectfully concur in part.

[1] See *Miranda* v. *Arizona*, 384 U.S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966).

[2] Nevertheless, I note that I agree with the dissent in that I would not rely on Calixte's testimony describing how she escorted the defendant to her supervisor's office as in any way supporting a finding that the defendant "chose," voluntarily, either to meet or remain with the officers. The issue of whether Calixte informed the defendant that he had a choice to attend the interrogation was hotly disputed at trial; Calixte's testimony was at best ambiguous on this issue, and the trial court made no findings on this issue. The trial court, which heard her testimony, was best suited to assess her credibility and whether her testimony was purposefully evasive. It is not for this court to assess witness credibility or to find facts.

Both the majority and the dissent recount Calixte's testimony at length, and so I will not repeat it here. To the extent the majority suggests that we may review the record as a whole, including Calixte's testimony, and conclude that the defendant voluntarily chose to attend or remain in the meeting, I disagree. The trial court did not make any findings about whether the defendant had a "choice" to meet with the officers; nor did it specifically credit Calixte's testimony. The majority apparently considers itself free to "review the record in its entirety to determine whether a defendant's constitutional rights were infringed by the denial of a motion to suppress. *State* v. *Kendrick*, 314 Conn. 212, 218 n.6, 100 A.3d 821 (2014); see, e.g., *State* v. *Fields*, 265 Conn. 184, 191, 827 A.2d 690 (2003) (record on review of ruling on pretrial motion to suppress includes evidence adduced at trial); see also, e.g., *State* v. *Toste*, 198 Conn. 573, 576, 504 A.2d 1036 (1986)." (Internal quotation marks omitted.) Footnote 4 of the majority opinion. But this is true only for undisputed facts established in the record. See *State* v. *Edmonds*, 323 Conn. 34, 39, 145 A.3d 861 (2016); see also *State* v. *Castillo*, 329 Conn. 311, 340, 186 A.3d 672 (2018) (*D'Auria, J.*, dissenting).

[3] One device that courts and counsel should employ to guard against overreliance on multifactor tests is to look back to the derivation of the test to see if it is truly applicable. Undertaking that examination in the present case reveals that the usefulness of the *Mangual* factors as a whole in these circumstances is debatable. In *Mangual*, this court explained that the ten factors it listed were the result of "[a] review of . . . cases from this state, as well as federal and sister state cases involving the interrogation of a suspect *during a police search of his residence* . . . ." (Emphasis added.) *State* v. *Mangual*, supra, 311 Conn. 196–97. Thus, these factors were developed from case law addressing whether a defendant was in custody when interrogated during a police search of his or her residence. Whether reasonable persons in that circumstance would feel free to leave their homes, or to tell the police to leave, is at least a somewhat different inquiry than an inquiry into whether custodial interrogation existed at a police station or a probation office. Less than one decade later, however, it is not clear

to me that we have given any thought to whether each *Mangual* factor has any relevance to other alleged custodial circumstances or whether we have instead transformed those factors into a test that must be applied to all determinations of custody, regardless of the circumstances. See, e.g., *State* v. *Arias*, 322 Conn. 170, 177–79, 140 A.3d 200 (2016) (applying *Mangual* factors to determine if defendant was in custody when interrogated at police station); *State* v. *Garrison*, 213 Conn. App. 786, 810–11, 814–27, 278 A.3d 1085 (applying *Mangual* factors to determine custody when defendant was interrogated at hospital), cert. granted, 345 Conn. 959,      A.3d      (2022); *State* v. *Chankar*, 173 Conn. App. 227, 237–38, 162 A.3d 756 (applying *Mangual* factors to determine custody when defendant was interrogated at cemetery), cert. denied, 326 Conn. 914, 173 A.3d 390 (2017); *State* v. *Cervantes*, 172 Conn. App. 74, 87–88, 158 A.3d 430 (applying *Mangual* factors to determine custody when defendant was interrogated inside police vehicle), cert. denied, 325 Conn. 927, 169 A.3d 231 (2017). However, some of the *Mangual* factors that are clearly relevant to evaluating custody when a defendant is interrogated inside his or her home—such as the number of officers present for the interrogation—appear to me often to be irrelevant when a defendant is interrogated at a police station, where, regardless of the number of officers present for the interrogation, the defendant could not leave without passing by numerous officers.

This further supports my caution against the use of multifactor tests. Many of this court's multifactor tests are simply a result of this court's having broadly surveyed—indeed, truly listing—the factors that have been determinative in prior cases. *State* v. *Geisler*, 222 Conn. 672, 610 A.2d 1225 (1992), is perhaps the classic example in our jurisprudence. In *Geisler*, in establishing a multifactor test for claims brought under the state constitution, we noted that, in some prior cases, one of the dispositive factors was relevant federal precedent, but in other prior cases, one of the dispositive factors was public policy concerns. See id., 684–85. Forever since, both federal precedent and public policy concerns have become part of the multifactor test, which, now, in my opinion, seems to focus more on the number of factors satisfied than on which factors are actually relevant to the circumstances at issue. See *Connecticut Coalition for Justice in Education Funding, Inc.* v. *Rell*, 295 Conn. 240, 401 n.2, 990 A.2d 206 (2010) (*Zarella, J.,* dissenting) ("question[ing] [*Geisler*'s] legitimacy on the ground that it is no more than a checklist from which to select [various interpretive] tools and that it provides no guidance as to the significance of selecting any particular method in any particular case" (internal quotation marks omitted)). Other examples abound. See, e.g., *State* v. *Victor O.*, 301 Conn. 163, 174, 20 A.3d 669 ("[r]ecognizing the indefiniteness inherent in applying [the] multifactor approach [under the test set forth in *State* v. *Porter*, 241 Conn. 57, 698 A.2d 739 (1997), cert. denied, 523 U.S. 1058, 118 S. Ct. 1384, 140 L. Ed. 2d 645 (1998)], we observed that [t]he actual operation of each factor, as is the determination of which factors should be considered at all, depends greatly on the specific context of each case" (internal quotation marks omitted)), cert. denied, 565 U.S. 1039, 132 S. Ct. 583, 181 L. Ed. 2d 429 (2011); *State* v. *Williams*, 204 Conn. 523, 540, 529 A.2d 653 (1987) (setting forth multifactor test for determining prejudice caused by prosecutorial impropriety after reviewing various factors that have been dispositive in prior cases); see also *Neil* v. *Biggers*, 409 U.S. 188, 199–200, 93 S. Ct. 375, 34 L. Ed. 2d 401 (1972) (employing multifactor test for determining reliability of identification despite use of suggestive procedures during confrontation procedure based on factors that have been relevant in prior cases).

[4] The majority likewise questions the relevance of this factor: "We acknowledge the tension with placing significant weight on this factor given that a suspect may not know at the outset of or during a particular interrogation whether he will be permitted to leave at the end of the interrogation. However, both the United States Supreme Court and this court have considered this factor in the totality of the circumstances that bear on a custody determination. Thus, although we do not place great weight on this factor, we nevertheless consider it in accordance with long-standing, established precedent in this area." Footnote 18 of the majority opinion; see *Howes* v. *Fields*, 565 U.S. 499, 509, 132 S. Ct. 1181, 182 L. Ed. 2d 17 (2012).